**No. 60715.**—Henry Clay & Bock & Co., Ltd. *v.* United States, protest 143000–K (Philadelphia).

DONLON, Judge: Plaintiff is the owner and operator of a bonded manufacturing warehouse at Trenton, N. J., in which there is manufactured, for sale within the United States, cigars made entirely of tobacco imported from Cuba.

This sort of customs warehouse is known as a class-6 warehouse, being so designated in section 19.1, Customs Regulations. Section 19.1 is, in relevant part, as follows:

*Classes of customs warehouses.*—(a) Customs warehouses shall be designated according to the following classifications:

\*     \*     \*     \*     \*     \*     \*

Class 6.—Warehouses for the manufacture in bond, solely for exportation, of articles made in whole or in part of imported materials or of materials subject to internal-revenue tax; and for the manufacture for home consumption or exportation of cigars in whole of tobacco imported from one country.

In the course of manufacture of cigars, certain tobacco wastes are produced. For a period of years, from 1935 down to January 28, 1948, defendant permitted plaintiff, and other similarly situated operators of class-6 warehouses for the manufacture of cigars for domestic sale, an allowance for duty, in the liquidation of entries of tobacco manufactured into cigars in such warehouses, for tobacco wastes, when destroyed under customs supervision. It appears that, during this period, it was generally understood, but without judicial decision, that the statute authorized this allowance.

To effectuate such allowances, operators of class-6 warehouses would apply to local collectors for license to destroy the wastes under customs supervision, and such supervision was provided.

The Secretary of the Treasury, by letter, dated January 28, 1948, ruled that such allowances for waste could not be made and that operators of class-6 warehouses could not thereafter obtain licenses to destroy, under customs supervision, wastes produced in the manufacture of cigars, entirely of imported tobacco, for domestic sale.

The protest before us is dated March 11, 1948, and is against a decision of the collector of customs at Philadelphia "of February 25th, 1948, denying the payment of refund of duty due on the destruction, in lieu of exportation, of stems and various tobacco wastes produced" in plaintiff's class-6 warehouse.

By amendment, undated but evidently on or about April 15, 1955, plaintiff added to its protest certain other claims, which refer to "refunds'of duties'in question" and "denial" of such refunds.

The decision of the collector of February 25, 1948, alleged to be a denial of refund, was not offered in evidence. The stipulation of facts, also undated, includes the following matter, which seems pertinent to an understanding of the decision mentioned. It is all we have of record with respect to that decision.

IT IS HEREBY STIPULATED AND AGREED:

\*        \*        \*        \*        \*        \*        \*

2. That on February 25, 1948, the plaintiff applied to the Collector of Customs at Philadelphia for permission to destroy, during the month of March, 1948, said tobacco stems and other tobacco wastes under customs supervision, but permission to destroy them under customs supervision was refused by the collector on February 25, 1948, pursuant to instructions of the Secretary of the Treasury under date of January 28, 1948;

3. That after refusal of such permission, namely, during the month of March, 1948, the plaintiff destroyed said tobacco stems and other tobacco wastes in its said bonded manufacturing warehouse but not under customs supervision;

4. That it was impossible for the plaintiff to destroy said tobacco stems and other tobacco wastes under customs supervision because of the refusal, as aforesaid, of the Collector of Customs at Philadelphia to permit customs supervision of their destruction;

Plaintiff's protest, as noted earlier, is dated March 11, 1948. It is stamped by the liquidating division, Custom House, Philadelphia, on March 17, 1948. Whether or not it is of any significance, this delay of 6 days is not explained.

There is no way of ascertaining from the record whether or not, at the time plaintiff's protest was filed, the waste for which refund is claimed had already been destroyed. What is certain is that this waste had not been destroyed on February 25, 1948, the date of the protested decision. It was destroyed "during the month of March, 1948." Nor does the record show, as of February 25, 1948, or prior thereto, any claim for refund or denial of such claim. The stipulated facts are that "permission to destroy them [i. e., wastes] \* \* \* was refused by the collector on February 25, 1948 \* \* \*." [Parenthetical matter inserted for clarity.] That is the decision which plaintiff has protested.

The record in a prior case, *Henry Clay and Bock & Co., Ltd.* v. *United States*, 41 C. C. P. A. (Customs) 45, C. A. D. 527, has been incorporated into the record before us. The letter of February 25, 1948, seems not to be in that record.

In our opinion, the record before us does not show either the denial of a claim for refund or such other decision by the collector as may be protested under section 514.

Clearly, no right to refund, nor, for that matter, to allowance under section 311, equivalent to refund, could arise until the tobacco wastes had been destroyed. As long as they existed, plaintiff could have sold them in the domestic market or exported them, with duty effects other than those claimed for wastes destroyed. There could be no right to refund until the wastes were destroyed, and, on the facts of record, this did not occur until some time in March 1948. It had not happened on February 25, 1948. Claim for refund, even if the record showed it had been made on or prior to February 25, 1948 (and this is not shown), would have been premature.

We are of opinion that the collector's decision refusing permission for customs supervision of destruction is not such a decision as may be protested under section 514. That section states, in clear language, what is meant by "decisions." They are those "as to the rate and amount of duties chargeable" and certain other enumerated decisions, none of which is a decision denying customs supervision of the destruction of merchandise.

491

Plaintiff seems to urge here that denial of permission for customs supervision of destruction was tantamount to denial of some refund claim that might accrue after destruction. Yet, its entire case is predicated on the argument that destruction of the wastes, later and without such permission, gave rise to a refund right. Plaintiff cannot have it both ways.

It is not necessary to rule on the issue chiefly argued by the parties. We do not decide whether the Secretary of the Treasury, in his letter of January 28, 1948, correctly interpreted the law as to duty allowances or refunds. The record here does not suffice to present that issue for our decision.

On the record before us, plaintiff has not shown either a claim for refund, or a right to refund, at or prior to the date of the protested decision. Plaintiff has not shown any decision which may be protested. Indeed, it is difficult to see what judgment the court could enter, even if all issues were resolved in the plaintiff's favor. A right *in vacuo* to a claimed interpretation of the law is asserted.

The protest is dismissed.

## CONCURRING OPINION

Johnson, Judge: I am in agreement that the protest herein should be dismissed. However, since, as written, it is against a collector's decision denying payment of a refund of duty due on destruction of tobacco wastes and is in form the same as that in *Henry Clay and Bock & Co., Ltd.* v. *United States*, 41 C. C. P. A. (Customs) 45, C. A. D. 527, I am of opinion that some further statement is appropriate.

The protest is headed:

Re: Application for refund of duty on certain stems and wastes produced and destroyed under Customs supervision in Class #6 Bonded Manufacturing Warehouse of Henry Clay & Bock & Co., Ltd. for the period 3/1/48 to 3/31/48
Application filed 2/25/48

The body thereof states:

We protest herewith against your decision of February 25th, 1948, denying the payment of refund of duty due on the destruction, in lieu of exportation, of stems and various tobacco wastes produced in our class #6 Bonded Manufacturing Warehouse under the provisions of Section 557 of the Tariff Act of 1930.

An examination of the record in *Henry Clay and Bock & Co., Ltd.* v. *United States, supra,* incorporated herein, and the facts pertaining to this case indicates the following significant differences:

In the incorporated case, the application for permission to destroy the tobacco wastes was granted by the collector and the wastes were destroyed under customs supervision. The storekeeper of the warehouse in which the wastes were incurred certified the kinds which had been destroyed and the weight of each. Thereafter, an "Abstract of Manufacturing Records and Entry for Refund of Duty" was filed, and the collector denied the request for a refund of duty, pursuant to instructions of the Secretary of the Treasury. It was against that decision of the collector that the protest was filed.

In the instant case, the application for permission to destroy the tobacco wastes under customs supervision was denied by the collector on February 25, 1948. During March 1948, the tobacco wastes were destroyed, but not under customs supervision. The protest herein was filed on March 17, 1948, but it does not appear whether the wastes had been destroyed by then or not. It is clear, however, that they had not been destroyed on February 25, 1948, and that the plaintiff could not have been entitled to any refund at that time. Therefore, if, as the protest indicates, the collector's decision of February 25, 1948, denied payment of a refund of duty, it was proper, since, under no theory of the case, could a refund have been due prior to the destruction of the tobacco wastes.

While the collector's decision of February 25, 1948, is not in evidence, the parties have apparently regarded it as a decision or statement that "no allowance would be made for such tobacco waste" when destroyed. (See defendant's brief, p. 2.) It may be that plaintiff considered the filing of an abstract of its manufacturing records and entry for refund of duty a futile act, in that the collector would have refused to grant a refund, anyway. However, since the collector's denial of a refund before the destruction of the merchandise was clearly proper, the filing of an abstract of manufacturing records and an application for a refund after the destruction of the merchandise was necessary not only to advise the collector of the weight and kinds of tobacco wastes destroyed and the specific claim made but also to permit him to grant or deny an actual claim, rather than to make a declaratory statement that he would deny a claim when and if presented.

In my view, plaintiff's case could not be perfected until the tobacco wastes had been destroyed, a claim for refund of duties on the amounts actually destroyed presented, and said claim denied by the collector. A protest against a collector's decision rendered before these events could have occurred is premature and must be dismissed.