(C.D. 2081)

HENRY CLAY & BOCK & CO., LTD. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 14, 1959)

*Fred Bennett* (*John R. Rafter* and *Jordan & Klingaman* by *Edward F. Jordan* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., concurring

RICHARDSON, Judge. This action has been instituted to recover a refund of customs duties on certain tobacco wastes.

The case has been submitted for decision on a written stipulation of facts and on papers and documents referred to therein. The facts may be stated very briefly.

The plaintiff manufactures for home consumption cigars made entirely of Cuban tobacco, and for this purpose owns and operates a class 6 bonded manufacturing warehouse, which is located in Trenton, N.J. The involved wastes resulted from the process of manufacturing cigars in this warehouse.

The imported tobacco from which the wastes were derived consisted of unstemmed leaf tobacco, both wrapper and filler, and stemmed filler tobacco. It was entered and placed in a bonded storage warehouse. Before it was removed therefrom to the class 6 warehouse, the tobacco was classified and duties were assessed under 19 U.S.C., section 1001, paragraph 601 (par. 601, Tariff Act of 1930) on the entire amount of tobacco imported.

It had been the practice pursuant to a ruling of the Treasury Department made in 1935 for collectors of customs to make allowance in the liquidation of entries of tobacco manufactured into cigars in a class 6 bonded manufacturing warehouse for tobacco wastes derived

from tobacco imported from any one country, when such wastes were exported or were *destroyed under customs supervision*, and refunds of customs duties were made on the weight of the wastes. This practice remained in effect until January 28, 1948, when the Secretary of the Treasury ruled that such allowances were not authorized by law, and collectors of customs were instructed to deny claims for refunds of duties on tobacco stems and other wastes incurred and destroyed in class 6 bonded manufacturing warehouses. In conformity with these instructions, such claims have since been denied.

Nevertheless, plaintiff, by application dated September 1, 1951, and bearing the customhouse stamped date, October 1, 1951 (plaintiff's exhibit A), sought permission from the collector of customs at Philadelphia to destroy, during the month of September 1951, under customs supervision, the tobacco wastes covered by the protest in the instant case. It appears from the facts and from the documents in evidence that the tobacco wastes had been destroyed without customs supervision prior to October 1, 1951, the date on which the application together with a claim for refund of duties on the destroyed tobacco wastes was presented to the collector. Both the application to destroy the wastes under customs supervision and the claim for refund of duties were denied. The instant protest is directed against the decision of the collector rejecting the refund claim.

In the amended protest, it is claimed that the refund of duties sought is allowable under 19 U.S.C., section 1557 (§ 557 of the Tariff Act of 1930), as amended, or, in the alternative, under 19 U.S.C. section 1311, as amended, or section 1558 (§ 311, as amended, or § 558 of the Tariff Act of 1930), or under either or both of said sections in conjunction with 19 U.S.C., section 1557 (§ 557 of the Tariff Act of 1930), as amended. The provisions of these statutes deemed relevant to a resolution of the question presented are reproduced in the margin.[1]

Technically, the protest could be overruled in this case, because the plaintiff's request for permission to destroy under customs super-

---

[1] [19 U.S.C.] § 1311. Bonded manufacturing warehouses.

All articles manufactured in whole or in part of imported materials, or of materials subject to internal-revenue tax, and *intended for exportation without being charged with duty,* . . . shall, . . . in order to be so manufactured and exported, be made and manufactured in bonded warehouses. . . . [Emphasis supplied.]

. . . . . . . .

Articles or materials received into such bonded manufacturing warehouses or articles manufactured therefrom may be withdrawn or removed therefrom for direct shipment and exportation or for transportation and immediate exportation in bond to foreign countries . . . : *Provided,* That all waste material may be destroyed under Government supervision. . . .

. . . . . . . .

Articles manufactured under these provisions may be withdrawn . . . for transportation and delivery into any bonded warehouse at an exterior port for the sole purpose of immediate export therefrom : *Provided,* That cigars manufactured in whole of tobacco imported from any one country, made and manufactured in such bonded manufacturing warehouses, may be withdrawn for home consumption *upon the payment of the duties on such tobacco in its condition as imported* under such regulations as the Secretary of the Treasury may prescribe, and the payment of the internal-revenue tax accruing on such cigars in their

vision was subsequent to the destruction rather than prior thereto. But, inasmuch as the regulation empowering the collectors to grant the permission to importers to destroy under customs supervision had been revoked, the permission has been denied consistently since the revocation, and counsel for the parties have stipulated that it was impossible to obtain such supervision, and the law does not require a man in establishing his rights to do that which is legally impossible for him under the circumstances, *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T.D. 32074, it is deemed appropriate for the court to pass on the real issue in the case which is whether the provisions of the Tariff Act of 1930, upon which the plaintiff relies for recovery, authorized a refund of customs duties on tobacco wastes resulting from the manufacture of cigars in a class 6 bonded manufacturing warehouse.

This issue was decided adversely to plaintiff by this court in the case of *Henry Clay and Bock & Co., Ltd.* v. *United States*, 27 Cust. Ct. 234, C.D. 1377. That decision was reversed by the Court of Customs and Patent Appeals in the incorporated case of *Henry Clay and Bock & Co., Ltd.* v. *United States*, 41 C.C.P.A. (Customs) 45, C.A.D. 527, but the reversal was based solely on the principle that "when the Government over a long period of time construes an ambiguous statute, such as section 311, and applies such construction through decisions which are later changed, then rights acquired prior to such a change cannot be affected retroactively or benefits received as a result thereof, required to be returned." Plaintiff asks that we reconsider our position on this issue, in the light of the excellent and very exhaustive brief filed by plaintiff with the Court of Customs and Patent Appeals on appeal from the earlier decision of *Henry Clay and Bock & Co., Ltd., supra.*

At the outset, we are met with the claim that the refund of duties should be made by virtue of the provisions of section 1311, *supra.* Therefore, we shall first direct our attention to the terms of that

condition as withdrawn. . . . [Emphasis supplied.]

[19 U.S.C.] § 1557. Entry for warehouse; warehouse period; drawback.

(c) Merchandise entered under bond, under any provision of law, may, upon payment of all charges other than duty on the merchandise, be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and upon such destruction the entry of such merchandise shall be liquidated without payment of duty and any duties collected shall be refunded.

[19 U.S.C.] § 1558. No remission or refund after release of merchandise.

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

(3) When articles entered under bond, under any provision of law, are destroyed within the bonded period as provided for in section 1557 of this title, or are destroyed within the bonded period by death, accidental fire, or other casualty, and proof of such destruction is furnished which shall be satisfactory to the Secretary of the Treasury, in which case any accrued duties shall be remitted or refunded and any condition in the bond that the articles shall be exported shall be deemed to have been satisfied.

section, which an examination reveals are concerned primarily with the conditions under which articles from imported merchandise intended for exportation without being charged with duty may be manufactured in and exported from class 6 bonded manufacturing warehouses. It is provided, however, in paragraph 8 of the section, that cigars manufactured in whole of tobacco imported from any one country may be withdrawn for home consumption upon the condition that duties are paid "on such tobacco in its condition as imported." The meaning of this proviso is a point of contention. The proper meaning to be attributed thereto, according to plaintiff, is that the words "such tobacco" relate to the tobacco actually contained in the cigars and that duties are payable only on the weight of that tobacco. On the other hand, defendant contends that the antecedent of the words "such tobacco" is the phrase "tobacco imported from any one country," and that, therefore, duties must be paid on the weight and quantity of all of the tobacco imported for use in manufacturing the cigars.

If cigars are to be withdrawn for home consumption from a class 6 bonded manufacturing warehouse, under the express terms of the statute, duties are to be paid on the tobacco *in its imported condition.* What was the condition of the tobacco when it was imported? According to the agreed facts, it was in the form of *leaves,* wrapper and filler, *stemmed* and unstemmed. The stems and other wastes on which plaintiff now seeks a refund were an integral part of the leaves of the tobacco used in manufacturing the cigars when it was imported into this country from Cuba. Therefore, in view of the statutory requirement for the payment of duties on the tobacco in its imported condition, it is difficult to see how it can be maintained that duties should be refunded on wastes which constituted an inseparable part of the tobacco at the time of importation.

In construing words of a statute, the legislative definition or use of the same words on the same or a related subject is entitled to consideration. *United States* v. *Freeman,* 3 How. 556, 11 L. ed. 724. Plaintiff directs us to 19 U.S.C., section 1562 (§ 562, Tariff Act of 1930), as amended, which provides for the withdrawal of merchandise from a bonded manufacturing warehouse upon the payment of duties on such merchandise "in its condition and quantity, and at its weight" at the time of withdrawal. The contention is made that the use of this language indicates that the word "condition" is not employed in the act of 1930 to embrace weight or quantity. There is a presumption that a term used in several sections of a tariff act is used with the same meaning in each section. However, in view of the legislative history of section 1562, as recited in the case of *United States* v. *Siegfried Lowenthal Co.,* 31 C.C.P.A. (Customs) 19, 30, C.A.D. 244, we do not think that presumption can prevail in this instance. Section 1562, as it appeared in the Tariff Act of 1922, contained the language

"in its condition at the time of withdrawal." When consideration of this section came up for inclusion in the Tariff Act of 1930, a question arose as to the intended scope of the word "condition," that is, whether changes in quantity, weight, and value were to be taken into consideration in determining the condition of the merchandise for the purpose of assessing duty thereon. In order to clarify the section and remove the doubt, it was proposed to amend the section by changing the terminology from "in its condition at the time of withdrawal" to "in its condition and quantity, and at its weight, at the time of withdrawal." This affords a complete demonstration of the legislative construction of the word "condition," as it was used in section 562 of the 1922 tariff act, and indicates that it definitely embraced weight and quantity. The legislative history establishes without a doubt that the change in phraseology was not meant to alter the meaning of the section, but the purpose of the variation was to restate and clarify the existing law.

It is, therefore, reasonable to assume that the intended scope of the word "condition" in the phrase "condition as imported" in section 311 of the Tariff Act of 1922 was the same as the scope of the word "condition" in section 562 of that act, and that no alteration in meaning was intended in the statute under consideration, since it was brought forward into the Tariff Act of 1930 with the language unchanged. Where the provisions of a statute are carried forward and embodied in a revision or reenacted in the same or in substantially the same words, the latter provision is considered a continuance of the old law, and its scope or meaning is not altered in the absence of a clear intention to the contrary.

The history of section 311 and more specifically of the so-called cigar proviso seems to confirm the construction that the statute contemplates the payment of duties on all of the tobacco used in the process of manufacturing the cigars including the waste incurred during the process. The proviso first appeared in the Tariff Act of 1913 as an amendment to paragraph M of that act. This paragraph was superseded by section 311 of the Tariff Act of 1922, and this, in turn, was superseded by section 311 of the Tariff Act of 1930. The language of the cigar provision has not been changed since it first became a part of tariff legislation. From the time of its enactment, in 1913, and until the Treasury ruling of 1935, it was the administrative practice to require payment of duty on all of the tobacco brought into the country and transferred to a class 6 bonded manufacturing warehouse for processing into cigars and to make no allowance for waste resulting therefrom. The *contemporaneous* construction placed upon the statute by the executive and administrative officers charged with its administration, as evidenced by this administrative practice, was observed consistently and uniformly for a period of 22 years, and the

court may consider such contemporaneous construction as an aid in construing an ambiguous statute.

Congress twice reenacted without amendment the statute under consideration presumably with knowledge of the contemporaneous construction placed thereon, and "the reenactment of the statute by Congress, as well as the failure to amend it in the face of the consistent administrative construction, is at least persuasive of a legislative recognition and approval of the statute as construed." *McCaughn* v. *Hershey Chocolate Co.*, 283 U.S. 488. To the same effect, see *C. J. Tower & Sons* v. *United States*, 44 C.C.P.A. (Customs) 41, C.A.D. 634. This construction not only accords with our impression of the natural meaning of the language employed, but is also in line with the general rule that the classification of imported merchandise is determined as of its condition at the time of importation. *Worthington* v. *Robbins*, 139 U.S. 337, and *United States* v. *Schoverling*, 146 U.S. 76.

It might be said that this is a strict construction of the cigar provision of the statute under consideration. However, a comparison between the rate of duty applicable to cigars, i.e., $4.50 per pound and 25 per centum ad valorem, and the rates applicable to leaf tobacco (see paragraph 605 of the Tariff Act of 1930) plainly shows that the right to withdraw the cigars from warehouse on the payment of duty on the tobacco in its imported condition rather than on its condition at the time of withdrawal was the grant of a privilege, and, as the defendant points out in its brief, the law granting such a privilege must be strictly construed as against the one who seeks advantages under it.

Plaintiff argues that the destruction of the tobacco waste is permitted by virtue of the second proviso in the fifth paragraph of section 311, which provides that "all waste material may be destroyed under Government supervision," and that it is plainly implied that the wastes so destroyed are exempt from duty. We are unable to agree with the first part of this argument. In the absence of a clear indication of a contrary legislative intention, the operation of a proviso should be restricted to the clause or portion of the statute which directly precedes it in the statute, *Tilge* v. *United States*, 2 Ct. Cust. Appls. 129, T.D. 31662. A reading of the proviso in relation to the provisions preceding it clearly indicates that the wastes referred to are those incurred in the manufacture of articles intended for *exportation* without being charged with duty. We admit that wastes so destroyed are exempt from duty, and, in fact, no question of duty arises in connection therewith.

In considering this provision of the statute for the destruction of wastes, the Customs Court said, in *Henry Clay and Bock & Co., Ltd.*,

*supra,* "the 'cigar proviso,' however, is a departure from the general customs treatment of imported merchandise in bonded manufacturing warehouses, in that it permits the withdrawal of such cigars for home consumption upon the payment of duty on the tobacco in its condition as imported. Being a specific provision it is removed from the general provision which contemplates the exportation of the article into which the imported material has been converted.

"It is clear, therefore, that both the proviso for the destruction of waste occurring in the manufacture of merchandise in a bonded warehouse, which merchandise is exported, and the 'cigar proviso' under which no allowance for waste is made when the cigars are withdrawn for consumption, are harmonized and can be equally administered with due regard to both."

Plaintiff makes the further claim that duties are refundable on the wastes in question, by virtue of the provisions of 19 U.S.C. section 1557, as amended, and section 1558 (§ 557, as amended, and § 558, Tariff Act of 1930). These sections are general provisions relating to the destruction of merchandise entered under bond and the refund of duties thereon and must be considered in connection with section 1311. The sections should be read together and harmonized, if possible, because it is an elementary rule of statutory construction that, if it is possible to do so, all parts of a statute should be given effect, and general language in one part of a statute will not be held to modify specific provisions of another part, unless such modification is expressly stated or clearly implied. *United States* v. *Siegfried Lowenthal Co., supra.*

We are convinced that the provisions of these sections (1557 and 1558) were not intended to apply to wastes resulting from the process of manufacturing articles in a class 6 bonded manufacturing warehouse. Section 1557(c) provides for the destruction of and the refund of duties on "merchandise entered under bond." Section 1558 provides for the refund of duties on destroyed "articles entered under bond." We agree with defendant that the merchandise or the articles entered under bond within the meaning of these statutory provisions was the tobacco imported for the manufacture of the cigars and not the wastes which resulted from the manufacturing process. If, as plaintiff would have it, wastes resulting from a manufacturing process in a bonded manufacturing warehouse are within the purview of the provisions of the aforementioned statutes, their destruction is provided for by the provisions of section 1557, and this would seem to render superfluous the "waste proviso" of section 1311. It is not to be presumed that the legislature inserted superfluous language, or intended any part or provision of a statute to be redundant or useless. *Salt Lake County* v. *Utah Copper Co.,* 93 Fed. 2d 127, certiorari denied 58 S. Ct. 750, 303 U.S. 652. Rather, it should be presumed that if

Congress has covered certain subject matter by legislation, it would not again be included in other legislation.

Defendant has directed the attention of the court to the case of *American Smelting & Refining Co. v. United States*, 13 Ct. Cust. Appls. 507, T.D. 41391. The Customs Court cited that case in the earlier *Bock* case, *supra*, and said, "The case of *American Smelting & Refining Co. v. United States*, 13 Ct. Cust. Appls. 507, T.D. 41391, while not directly in point, lends support to the Government's position. There, crude ore containing both lead and zinc was imported and entered under bond for refining. In the refining process, the lead was recovered but the zinc was destroyed. The collector assessed duty upon both the lead and zinc content of the ore, and it was claimed on behalf of the importer that the duty paid on the zinc should be refunded. The court, in overruling this claim, said:

> Finally, it is argued that the zinc in question here was duly destroyed, under the last paragraph of section 537 [*sic*] [557], of said Tariff Act of 1922. That paragraph is as follows:
>
>> Merchandise entered under bond, under any provision of law, may be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and the consignee relieved of the payment of duties thereon.
>
> We are not prepared to hold that this language can be applied to the zinc in question. If appellant had procured the destruction, under this section, of the lead or other refined metal produced by him as the result of his smelting and refining operations, it might, with some reason, be claimed that all duties represented by his bond should be canceled. But here he does not do this. Retaining the recoverable product of his operations, he seeks the destruction of the irrecoverable residue and the cancellation, thereby, of a part of his bonded obligation. We believe that to so hold would be to accomplish by indirection what we have said, herein, we can not do by direction.

"Applying that reasoning to the case at bar, the importer retains the cigars and seeks the destruction of the waste, which is the result of the manufacturing process, thereby demanding cancellation of a part of its bonded obligation to pay duty on all of the tobacco imported. The provisions of section 557, *supra*, taken in connection with the 'cigar proviso' of section 311, *supra*, do not contemplate such a situation."

According to plaintiff, the provision in 19 U.S.C., section 1557 (§ 557, Tariff Act of 1930), as amended, for the destruction of merchandise entered under bond, first appeared in the same section of the Tariff Act of 1922. (See appellate brief, p. 43.) It was brought forward and embodied in the Tariff Act of 1930 with slight changes in phraseology. From the time of the enactment of section 557 as a part of tariff legislation in 1922 until 5 years after its inclusion in the Tariff Act of 1930, the administrative practice of making no al-

lowance in liquidation for tobacco wastes resulting from the manufacture of cigars in a class 6 bonded manufacturing warehouse remained unchanged. This administrative practice during the years immediately following the first enactment of section 557, evidences a contemporaneous construction of the statute that negatives the applicability of its provisions to tobacco wastes such as those with which we are here concerned.

In order to bring into operation the provisions of section 1558, *supra*, with reference to a refund of duties on destroyed articles entered under bond, the destruction must be made in conformity with the provisions of section 1557, *supra*. Since we have concluded that the provisions of that section do not apply in the case of the wastes in question, then it would appear to follow that section 1558, also, has no application.

Finally, even if it should be assumed arguendo that the general provisions of sections 1557 and 1558, upon which the plaintiff relies, are applicable to "section 1311 wastes," the plaintiff's case would not be benefited thereby in view of the construction which we have placed upon the "cigar proviso" of section 1311; since, in the absence of a clear legislative intention to the contrary, special or particular provisions control over general provisions of a statute, and even though the general provisions are broad enough to include the subject to which the specific provisions relate, the latter must be given effect. The particular provision should be regarded as an exception to the general provisions so that both may be given effect. 82 C.J.S. 722, and cases cited therein.

For the foregoing reasons, plaintiff's claims are overruled, and the action of the collector of customs in refusing to refund duties on the tobacco wastes involved is sustained.

Judgment will be rendered for the defendant.

### CONCURRING OPINION

DONLON, Judge: I arrive at the same decision as my esteemed colleagues; but I wish briefly to state certain reservations I have with respect to the majority opinion.

I agree that a man, in establishing his rights, is not required to do that which it is legally impossible for him to do under the circumstances. I, therefore, do not hold the view that this protest, under the circumstances stipulated, could be overruled on the "technical" ground that plaintiff did not timely request permission to destroy this tobacco waste under customs supervision. We have already held (*Henry Clay & Bock & Co., Ltd.* v. *United States*, 38 Cust. Ct. 489, Abstract 60715) that a claim for refund made before waste is destroyed is premature.

In my view of the law, sections 1557(c) and 1558(a)(3) authorize the remission or refund, as may be appropriate, of duty on merchandise (or articles, as in section 1558) which are entered in bond under *any* provision of law. Tobacco was entered by plaintiff in bond under a provision of law, namely, section 1311. Plaintiff's difficulty is that the merchandise (or article) which has been destroyed, and for which refund is claimed, is not the merchandise (or article) which was imported. What was destroyed is not the imported tobacco, but a byproduct of the process of manufacturing the imported tobacco.

I associate myself with the views expressed by my colleagues to that extent. This is why plaintiff cannot prevail under sections 1557 and 1558; and not because of any inconsistency between those sections and the provisions of section 1311.