(C.D. 2767)

C. S. EMERY & COMPANY  
W. A. GLEESON } v. UNITED STATES

United States Customs Court, First Division

(Decided September 15, 1966)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, consists of snaths or snath handles of wood, imported from Canada on various dates in 1964.[1] The merchandise was assessed with duty under item 206.54 of the Tariff Schedules of the United States at 16⅔ per centum ad valorem as tool handles of wood and is claimed to be entitled to free entry under item 666.00 under the provisions for hay or grass mowers and parts thereof or for agricultural and horticultural implements, not specially provided for, and parts thereof.

Pertinent provisions of the Tariff Schedules of the United States are as follows:

---

[1] This case was heard and submitted before Chief Judge Rao at St. Albans, Vt., on July 20, 1965. Plaintiffs' brief was filed on December 16, 1965, and defendant's brief on June 13, 1966. This case was resubmitted before the first division as now constituted on June 6, 1966.

| Item | Articles | Rates of Duty | |
|---|---|---|---|
| | | 1 | 2 |
| | Tools; tool bodies; tool handles, including knife, fork and spoon handles; handles and backs for brooms, mops, and brushes; all the foregoing of wood: | | |
| * | *   *   *   * | * | * |
| 206. 54 | Other_____ | 16⅔% ad val. | * * * |
| 666. 00 | Machinery for soil preparation and cultivation, agricultural drills and planters, fertilizer spreaders, harvesting and threshing machinery, hay or grass mowers (except lawn mowers), farm wagons and carts, and agricultural and horticultural implements not specially provided for, and parts of any of the foregoing____ | Free | * * * |

The headnote to schedule 6, part 4, subpart C, in which items 666.00 appears, provides:

1.   The provisions of item 666.00 for "agricultural and horticultural implements not specially provided for" do not apply to any of the articles provided for in schedule 6, part 2, part 3 (subparts A through F, inclusive), part 5, or part 6, or to any of the articles specially provided for elsewhere in the tariff schedules, but interchangeable agricultural and horticultural implements are classifiable in item 666.00 even if mounted at the time of importation on a tractor provided for in part 68 of this schedule.

Item 648.69 in schedule 6, part 3, subpart E, provides:

| Item | Articles | Rate of Duty | |
|---|---|---|---|
| | | 1 | 2 |
| | Drainage tools, * * * scythes, sickles, grass hooks, corn knives, * * *; all the foregoing which are hand tools, and metal parts thereof: | | |
| * | *     *     *     * | * | * |
| 648. 69 | Scythes, sickles, grass hooks, and corn knives, and parts thereof_____ | 8.5% ad val. | * * * |

James F. Maloney, president and general manager of the exporter, Dominion Snath Co., Ltd., of Waterville, Quebec, testified that he has been with the company since July 1962; that its business is the manufacture of snath handles, scythe snaths; that it has been shipping them to the United States since July 1962; and that it manufactured the articles described on the invoices here as snaths or snath handles. Snaths are sold in two sizes, one lighter in weight than the other; otherwise they are basically the same. A representative sample was received in evidence as plaintiffs' exhibit 1. It is a rounded curving piece of wood, about 56 inches long, and about 2 inches in diameter at the widest part, with two nibs or hand holds. In order to use it, it must be attached to a blade or cutting edge, called a scythe. Such a blade was received in evidence as plaintiffs' illustrative exhibit 2. It has a tang or hook at one end, and, according to the witness, is attached to the snath by inserting the tang through a loop bolt at the base of the snath. The completed article, consisting of the snath and scythe blade, is called a scythe and is a tool or implement. The snath permits the scythe to be adjusted to fit the user's stature and swing; the blade may be positioned to any particular angle desired. The snath carries the blade and the hands grip the nibs on the snath. The snath has no use except to be assembled with or fitted to a scythe blade.

The witness testified that he had seen the completed articles used in the United States, in Pennsylvania, in cutting grass and hay around fences, in cutting grass along inaccessible places along highways which

machinery cannot reach, and in small plots to cut hay for feeding live-stock. He said that farmers were the principal users.

Plaintiffs' second witness was George L. Earle, Jr., president and sales manager of North Wayne Tool Co., Oakland, Maine, the importer of the involved snaths. He testified that his company manufactures scythe blades and also sells snaths in order to offer customers complete units. His firm has been manufacturing scythes or scythe blades since 1835 and started importing snaths in 1962 "before there was any duty." He has sold scythes since 1936 but never as assembled units with snaths. The firm sells to distributors throughout the United States, offering scythes separately from snaths. A page from a catalog issued by the company, depicting a "Grass Snath" was received in evidence as plaintiffs' exhibit 3. Another page, depicting scythes, was received in evidence as plaintiffs' exhibit 4. The witness testified that there are various patterns, lengths, and grades of scythe blades, such as grass, weed, and bush, and that there are welded and one piece scythes. He has seen scythes and snaths in use since 1936 in the eastern part of the United States from Minnesota to New England and down the Atlantic coast to Florida. He has seen them used primarily by highway crewmen to cut grass along roadways which they could not reach with machinery, and secondly by farmers in finishing cutting hay and grain in a field, and also by men around his own shop to maintain a good appearance or to cut hay for sale.

Mr. Earle testified that various scythe blades can be used interchangeably with the same snath. That is one reason why blades and snaths are sold separately, another being that the blades have sharp edges. Blades are sold separately because it costs less to transport knocked-down items and because farmers and users have different ideas as to which blades they want to match with a snath.

William V. Mason, president of Derby & Ball Realty, Inc., of Waterbury, Vt., since 1933, testified that the company is presently engaged in selling scythe snaths and has in the past manufactured them. To his knowledge it has been importing scythe snaths since 1933. It does not sell scythe blades, such as exhibit 2. The witness has personally seen scythes and snaths used in the United States for 50 years and since 1933 has observed them with a business interest. He has seen them used in the northeastern quarter of the country, down the eastern seaboard, in the far west, particularly the southwest. He has seen them used by farmers to cut hay on the edges of fields near fences, near hedge rolls, on the sides of banks, and other places inaccessible to machines. He has seen highway crews using them to remove grass from the sides of the road where there were ditches that would prevent machines from mowing. He stated that he has been importing snaths since 1933 and paid no duty until August 1963, as snaths were previously classified under paragraph 1604 as agricultural implements.

Plaintiffs claim the imported snaths are entitled to free entry under item 666.00, *supra*, on the following grounds: (1) That they were previously free of duty under paragraph 1604 and there was no intent to make snaths dutiable under the tariff schedules; (2) that the snaths are parts of horticultural implements; (3) that they are parts of hay or grass mowers.

The TSUS seems to declare the classification of this merchandise without ambiguity. "Scythes" are dutiable under item 648.69, but their parts are so classifiable only if of metal. However, item 206.54 provides for "tool handles * * * of wood," picking up the scythe handles which these snaths are. Per Webster's New International Dictionary (unabridged, 1953 edition) a "snath" is the "handle of a scythe." In TSUS vocabulary a scythe is a "hand tool," for the caption to subpart E of schedule 6, part 3, which includes item 648.69, refers to "Tools, Cutlery, Forks and Spoons," of which scythes cannot be the last three. The provision for scythes under the subpart covers such as "are hand tools." Hence a provision for "tool handles" designates *eo nomine* handles of scythes.

Item 666.00 provides for "agricultural and horticultural implements not specially provided for" and "parts of any of the foregoing." But by express provision of the headnote, and not just by relative specificity, certain farm articles provided for elsewhere (including scythes) are excluded from item 666.00. Parts of such expressly excluded articles are not "parts of any of the foregoing." Therefore, item 666.00 does not cover snaths which are parts of scythes, expressly excluded articles.

The former law provided somewhat similarly in the free list in paragraph 1604 for "agricultural implements * * * whether in whole or in parts," excluding articles "specified by name in Title I." Thus excluded because enumerated in paragraph 373 were "scythes * * * and parts thereof, composed wholly or in chief value of metal." Nevertheless, in *C. S. Emery & Co.* v. *United States*, 68 Treas. Dec. 1099, Abstract 32387 (October 15, 1935), the court held that unfinished wood scythe snaths were classed under paragraph 1604. This case was not briefed. The collector had classified under paragraph 405, as wood, unmanufactured. The published abstract states "it is a matter of common knowledge that a scythe is an agricultural implement" and indeed the 1929 Summary of Tariff Information, schedule 3, page 847, so states. Plaintiffs rely on this case and say that the tariff commission was under a mandate to make a minimum of rate changes and represented it was making none in item 206.54; it related item 206.54 to old paragraph 412, under which snaths were not classified. Tariff Classification Study (November 15, 1960), schedule 2, page 27. But the language to be construed herein is, nevertheless, different and *Emery* is not an authority with respect to its meaning. The Tariff

Classification Study, schedule 6, pages 265–266, made it clear that some of the items formerly under paragraph 1604 were dealt with under TSUS elsewhere than in item 666.00. The study lay before the Congress and public hearings were held on all proposed schedules. Senate Report No. 1317, United States Code Congressional and Administrative News, 1962, pages 1641, 1643. The considerations plaintiffs invoke we may assume would be weighty in case of ambiguity; but here there is none. Thus we hold that if the tariff commission, without ambiguity, places in a duitable item of TSUS an article that was formerly free, while representing, mistakenly perhaps, in explanatory material, that the item makes no rate change, still, the unambiguous item must have its effect in this court.

In so holding, we do not wish to be understood as determining that under the former law, had it remained unchanged, snaths would have been properly free of duty under paragraph 1604. The court in *Emery* seems not to have adverted to the obvious objections to its holding, although, to be sure, it did not confront statutory language as difficult to reconcile with the result as the present language would be. The question of chief use was also involved: It may have been too obvious to require evidence in 1935 that scythes were chiefly used as farm implements, but how long did this remain "common knowledge" in view of the increasing mechanization of agriculture? The Summary of Tariff Information, 1929, spoke as of its own date and did not freeze the chief use for the future. The testimony herein does not even claim any chief use of the scythe in the harvesting of crops as of the date of importation. The hearing judge admitted evidence purporting to show plaintiffs had imported snaths free of duty up to the expiration of the old law. No claim was made, in the protest, or opening statement, as to the existence of an "established and uniform practice" under section 315(d). Compare *Borneo Sumatra Trading Co., Inc.* v. *United States*, 56 Cust. Ct. — C.D. 2624, and *Bauer Alphabets, Inc.* v. *United States*, 54 Cust. Ct. 255, C.D. 2540. The extent (if any) of carryover of rights vested under an old established and uniform practice into a TSUS item with somewhat changed language is an interesting question that does not confront us here. Nor need we consider here whether or to what extent the reference in TSUS item 666.00 to "agricultural and horticultural implements" broadens its scope as compared to the provision in older paragraph 1604 for "agricultural implements" only, since in our view the exclusionary language in item 666.00 would apply equally to agricultural and horticultural items, whatever difference between the two there may be.

Plaintiffs claim further that these snaths are parts of hay or grass mowers, specifically provided for in item 666.00, on the ground that the scythes are used to mow.

"Mowers" were mentioned by name in the agricultural implement paragraph of the Tariff Act of 1913 (paragraph 391). It was held in *C. H. Langley* v. *United States*, 30 Treas. Dec. 350, T.D. 36217, that lawn mowers and turf cutting machines used on golf courses were not classifiable thereunder. The court stated (p. 353):

With this contention we can not agree, for the simple reason that the term "mowers" as used in said paragraph plainly comprehends a well-defined and definitely understood class of articles which are well-known agricultural implements and which are wholly *ejusdem generis* with plows, harrows, headers, harvesters, reapers, agricultural drills and planters, horse rakes, cultivators, and thrashing machines, all of which are specifically provided for by name in said paragraph. As used by Congress, the term "mowers" is evidently intended to include large mowers and mowing machines of the type which are usually drawn by horse or other power, and which are used for cutting grain, wheat, rye, etc., in the fields. It certainly does not include lawn mowers, which are employed for cutting grass on lawns and on golf courses.

Webster's New International Dictionary, 1953 edition, defines a mower as "One who or that which mows; specif., a mowing machine" and the 1963 edition, quoted in defendant's brief, describes such a machine in detail.

No authority has been cited to show that a scythe falls within the common meaning of the term "hay or grass mower." In any event, it is more specially provided for under item 648.69; therefore, snaths are not covered by item 666.00 as "parts of any of the foregoing," including the hay or grass mowers specified.

For the reasons stated, we hold that the wooden snaths involved herein were properly assessed with duty under item 206.54 of the Tariff Schedules of the United States at 16⅔ per centum ad valorem, as tool handles of wood. The protests are overruled and judgment will be rendered for the defendant.