57 CCPA

**VELAN STEAM SPEC. and Velan Valve Corp., Appellants,**

v.

**The UNITED STATES, Appellee.**

**No. 5347.**

United States Court of Customs and Patent Appeals.

Feb. 19, 1970.

Rich, Acting C. J., and Lane, J., dissented.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellants; Joseph Schwartz, James S. O'Kelly, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Velta A. Melnbrencis, New York City, for the United States.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision and judgment of the United States Customs Court, Second Division,[1] overruling a protest against the collector's classification of certain imported merchandise. While the protest covered several entries, appellants at trial below abandoned all entries except the entry here on appeal.[2]

The involved merchandise was classified under item 680.22 of the Tariff Schedules of the United States (TSUS) covering hand-operated and check valves used to control the flow of liquids, gases, or solids, other than copper, and assessed with duty at the rate of 22.5% ad valorem. Appellants contend that the merchandise merely consisted of parts of valves which should have been classified under item 680.27 TSUS, covering items other than hand-operated and check valves and other than ballcock mechanisms and parts, and dutiable at the rate of 10% ad valorem.

The TSUS (as existing on the date of entry, September 23, 1963) are in material part as follows:

> Taps, cocks, valves, and similar devices, however operated, used to control the flow of liquids, gases, or solids, all the foregoing and parts thereof:
>
> Hand-operated and check:
> 680.20   Of copper ...............................*   *   *   *
> 680.22   Other ................................22.5% ad val.
>     Other:
> 680.27   Other ................................10% ad val.
> 680.25   Ballcock mechanisms, and parts ..........*   *   *   *

The involved item of TSUS, *as amended by Public Law 89–241, effective December 7, 1965,* reads in material part as follows:

> \*   \*   \*   \*   \*   \*
>
> Hand-operated and check, *and parts thereof*: [Emphasis added.]

The record reflects that the merchandise as imported would properly be categorized as incomplete valves with issue joined by the parties below as to whether such valves are covered by item 680.-22, as either finished or unfinished hand-operated valves or check valves or

1. Velan Steam Spec. & Velan Valve Corp. v. United States, 295 F.Supp. 1094, 62 Cust.Ct. 362, C.D. 3700.

2. Entry No. F3705.

as parts of said valves under item 680.27. Eschewing the issue thus presented, the Customs Court took the view that a proper interpretation of the relevant tariff provisions would indicate that where the valve is hand-operated, as here, it would properly be subject to classification under item 680.22.

In its analysis of the statute, the court observed that the phrase "however operated" indicated that valves may be operated by various methods and the provision for "Hand-operated and check" related to that specific form of operation, noting the second inferior heading of "Other" indicated a manner of operation other than hand-operated. This conclusion finds substantiation in item 680.25, an *eo nomine* provision for ballcock mechanisms which are automatically operated valves. In support of this rationale, the court noted the observation made in the Explanatory Notes of the Tariff Classification Study under schedule 6, part 4, subpart J:

> The superior heading to items 680.20 and 680.25 is a new provision for taps, cocks, valves, and similar devices. * * Item 680.20 provides without rate change for hand-operated devices and check devices presently dutiable under paragraph 397 at the rate of 22.5 percent ad valorem. Item 680.25 would cover "other" devices within the superior heading at the rate of 12.5 percent ad valorem derived from paragraphs 353 and 372.

The court considered it manifest from the above, and so do we, that the items intended to be covered by item 680.25 were those operated by electricity (Par. 353 Tariff Act of 1930) or were machines (Par. 372 Tariff Act of 1930) and in either event would be operated by means other than by hand.

We are of the view, therefore, as was the court below, that the provision for "Other" in item 680.22 covers all hand-operated valves etc., whether assembled or unassembled, finished or unfinished, composed of other than copper, and parts thereof. While we think this interpre-tation is reasonably supported by the terms of the statute, it finds further substantiation in the Technical Amendments Act of 1965, Public Law 89–241, adding the phrase "and parts thereof" after "Hand-operated and check." In House Report 342, section 42(b), we find clarification of legislative intendment in augmentation of the construction applied by the Customs Court. The Report states:

> Section 42(b) would correct the inadvertent omission of parts from the article description preceding items 680.20–680.22 relating to hand operated and check taps, cocks, valves, and similar devices.

This manifestation of legislative intent and purpose is additionally reflected in Senate Report 530, section 52(b), wherein it is stated:

> (b) *Parts of taps, valves, etc.*—This amendment corrects a technical oversight under which "parts" for hand-operated (and check) taps, cocks, valves, etc., were omitted from the article description of such items.

The Customs Court was fully aware that the 1965 amendment of Public Law 89–241 was not per se applicable to the instant case inasmuch as the merchandise in issue was imported prior thereto. It has efficacy, however, as a clear indication of congressional intent to include parts within the ambit of the statute extant on the date of entry. The omission as stated in the House and Senate Reports was an "inadvertent" or a "technical oversight." It was simply a clarification of language originally employed.

We have here a situation where the applicable statute consists of a superior heading and two inferior headings with four article descriptions (item 680.20 through 680.27), two indented under each inferior heading. The superior heading has broad sweep covering various valves and "similar devices, however operated" as well as their parts, thus indicating that parts are covered in the provisions which immediately follow. The only article description mentioning parts per

se is item 680.25, covering ballcock mechanisms and parts thereof. Where the framework and the language admit, it is the duty of the court to so construe a statute as to give effect to every part thereof. Giving effect to the statute so as to embrace coverage for parts of hand-operated and check valves under item 680.22 as classified, is, in our opinion, fully consonant with the terms of the statute under consideration. To read the words "parts of hand-operated and check" not into item 680.22 but into item 680.27, a provision clearly intended to cover devices other than hand-operated and check, would in our judgment constitute a resort to judicial legislation contrary to congressional intent.

Appellants' contention that the "clearest indication that the inferior heading as originally enacted did not provide for parts of hand-operated and check valves is the fact that Congress amended the law in 1965 to specifically include parts," is not tenable, in our opinion, under the circumstances of this case. The particular factual situation as revealed in each case is in large measure determinative of the proper interpretation to be accorded subsequent congressional action. United States v. Geo. Wm. Rueff, Inc., 41 CCPA 95, C.A.D. 535 (1953).

We are persuaded here, as was the court in *Rueff*, that "the circumstances * * * are more than ample to support our conclusion that Congress intended only to clarify the language originally employed * * *.

We have considered the cases cited and relied on and the arguments advanced by counsel, and we are not persuaded of reversible error in the decision of the Customs Court. The judgment overruling the claim in protest is, accordingly, affirmed.

Affirmed.

RICH, Acting Chief Judge (dissenting), with whom LANE, Judge, joins.

I respectfully submit that the majority opinion confuses two distinct questions: (1) what article description did Congress *intend* to enact?; and (2) what did Congress actually provide by the language of the article description that was enacted? While only the latter is involved here, all manifestations of Congressional intent referred to in the majority opinion relate only to the former and are irrelevant.

That Congress cannot retroactively clarify away an omission (unequivocally admitted to in both the House and Senate reports) would appear to be self-evident.

The *Rueff* case is neither controlling nor even particularly relevant. In *Rueff* the original language ("all binding twine") was, as this court held, broad enough to render the added language redundant; there was a decision by the Commissioner of Customs which Congress thought was clearly contrary to its intent as expressed in the original language; and there was no acknowledgment by Congress that something had been omitted from or was being added to the provision as originally enacted.

I realize that a reversal by this court will give the importer a windfall of sorts, but I do not consider that to be a justification for attempting to correct, retroactively, an error of omission admitted to by Congress. Importers are entitled to rely on the statutes as written by Congress and if Congress has failed to implement its own intent by appropriate words we should not do the implementing for it.