57 CCPA

**The UNITED STATES, Appellant,**

v.

**WESTERN OILFIELDS SUPPLY CO.,**
**Appellee.**

**Customs Appeal No. 5353.**

United States Court of Customs and Patent Appeals.

July 16, 1970.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Herbert P. Larsen, New York City, for the United States.

Glad & Tuttle, Los Angeles, Cal., attorneys of record, for appellee.

Before WORLEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and MATTHEWS, Senior Judge, United States District Court for the District of Columbia, sitting by designation.

BALDWIN, Judge.

This is an appeal by the United States from the judgment of the United States

9. In re Abrams, 188 F.2d 165, 38 CCPA 945 (1951).

Customs Court, Second Division,[1] sustaining the importer's protest that certain merchandise invoiced as "valve key operating nuts" should be classified under item 666.00, TSUS, as " * * * agricultural and horticultural implements not specially provided for, and parts of any of the foregoing," for which free entry is provided. In arriving at that judgment, the Customs Court held erroneous the District Director's classification of the importations under item 648.97, TSUS, as "pipe tools * * *, wrenches, * * * and [metal] parts thereof," with assessment of duty at 22.-5 per centum ad valorem.

An exhibit representative of the imported article shows it to be a hollow cylindrical sleeve of metal, approximately 1½ inches long and 1¼ inches in diameter. The sleeve has a bore of square cross section at one end which extends over more than half its length. For the remainder of the length, the bore is cylindrical and a pair of aligned openings pass transversely through the walls of that portion.

The sole witness at the trial below was an officer of, and the engineer for, the importer, which is a supplier of irrigation equipment. His testimony, along with a second exhibit that is representative of a "valve elbow" in which the imported sleeve was used, supplies the only evidence of the manner of use of the importation. The witness testified that the sleeve was designed by him as part of the "valve elbow" for use in irrigation systems. The systems were described as including a main line of pipe which might be provided with 25 or 30 valves spaced at intervals of fifty feet. In order to hold down the cost and bulk of the valves, only half of each valve would be permanently attached to the main line. The "valve elbow", in the form of a pipe elbow having one end arranged for attachment to a secondary line with sprinklers attached thereto, was adapted to be attached at its other end to the main line at the location of a valve half. The elbow further had a shaft extending through an opening in its wall into the cylindrical portion of the bore of the imported sleeve and fixed to the sleeve by means of a pin passing through the opposed opening in the sleeve wall. An operating handle can be attached to the other end of the shaft outside the valve elbow. In operation, the valve elbow is attached to the main line and the square bore of the sleeve fitted over a square operating stem of the valve half in the main line so that manipulation of the handle operates through the shaft to open the valve and place the main line and valve sleeve in communication.

The Customs Court considered the imported sleeve to be a part of a tool. However, it held that the sleeve was not classifiable under item 648.97 because the tool of which it was a part was not a *hand* tool for the reason that such tool was not "held and/or operated by the unaided hand," citing P. H. DeWilde and Harper, Robinson & Co. v. United States, 35 Cust.Ct. 295, Abstract 59420 (1955).

We agree that the imported sleeve is not properly classified under item 648.97 but our reasoning is somewhat different than that of the Customs Court. The valve half in the main line is moved to open position only when the valve elbow is attached to the main line, and the sleeve, its shaft, and the handle on the shaft, along with the rest of the valve elbow, remain assembled on the main line while the valve is open. These circumstances, taken with the witness' characterization of the mechanism permanently in the main line as "half of the valve", satisfies us that the valve elbow is properly considered a part of the valve. The operator, made up of the sleeve, shaft and handle, is a part of the valve elbow and is itself, therefore, a part of the valve. Thus, the operator is, in fact, a part of the activating means of the valve rather than a pipe tool

---

1. Western Oilfields Supply Co. v. United States, 62 Cust.Ct. 182, C.D. 3722, 296 F.Supp. 330 (D.C.1969).

which is usable separately from the valve.

In conformity with the alternative contention of the Government, the imported sleeve thus meets the requirements of item 680.22, TSUS, as follows:[2]

Taps, cocks, valves, and similar devices, however operated, used to control the flow of liquids, gases, or solids, all the foregoing and parts thereof:

Hand-operated and check:

\* \* \* \* \* \* \* \* \* \*

680.22 Other ...............................22.5% ad val.

---

Although the Customs Court rejected this alternative contention of the Government, it did not find that the terminology of item 680.22 failed to apply to the imported sleeves. Rather it held the contention "without merit" because:

\* \* \* valves which are agricultural implements are, nevertheless, more specifically provided for as agricultural implements and are not excluded from item 666.00 by virtue of the headnote in schedule 6, part 4, subpart C, which states as follows:

1. The provisions of item 666.00 for "agricultural and horticultural implements not specially provided for" do not apply to any of the articles provided for in schedule 6, part 2, part 3 (subparts A through F inclusive), part 5, or part 6, or to any of the articles specially provided for elsewhere in the tariff schedules \* \* \*.[3]

No express reasons were given for those conclusions by the Customs Court and appellee, having submitted the appeal on the record, leaves us without the benefit of any reasons it may have regarding the correctness of the court's conclusions.

In our own view of the case, we find it unnecessary to determine whether the imports are parts of agricultural and horticultural instruments. Assuming arguendo that they are, we nevertheless think the Customs Court erred in holding that they are properly classified under item 666.00.

In the first place, we agree with appellant that "agricultural and horticultural implements" cover a broader range of articles than "valves \* \* \* used to control the flow of liquids" and that the articles are thus more specifically provided for in item 680.22. See Humphreys v. United States, 407 F.2d 417, 56 CCPA 67 (1969); United States v. Simon Saw and Steel Co., 51 CCPA 33, C.A.D. 834 (1964).

Additionally, we are unable to agree with the Customs Court's conclusion that the importations are not excluded from item 666.00 by virtue of headnote 1 in schedule 6, part 4, subpart C, as set forth hereinabove. Rather that head-

---

2. In Velan Steam Spec. & Velan Valve Corp. v. United States, 420 F.2d 1399, 57 CCPA ——, (Decided February 19, 1970), this court held that item 680.22, worded as above, included parts even though "and parts thereof" was not added to "Hand operated and check" until an amendment effective December 7, 1965 (Public Law 89–241).

3. The asterisks at the end of this quote represent:

, but interchangeable agricultural and horticultural implements are classifiable in item 666.00 even if mounted at the time of importation on a tractor, provided for in part 6B of this schedule. However, the omission of this expression by the court indicates that it did not consider it pertinent here, and the Government also omitted it in quoting the headnote.

note appears to exclude from the item "any of the articles specially provided for elsewhere in the tariff schedules" and the importations are so specially provided for in item 680.22. We are particularly concerned with the absence of any reasons for the present conclusion in the opinion below or argument in its support by appellee. However, our conclusion not only appears to be required by the language of the headnote but also is in conformity with C. S. Emery & Co. v. United States, 57 Cust. Ct. 217, C.D. 2767 (1966), the only case brought to our attention which interprets the headnote in question.

For the foregoing reasons, the present importations should be classified in item 680.22 and assessed duty in accordance with its provisions.

The judgment is reversed.

Reversed.