(C.D. 2546)

MANNESMANN-MEER, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 21, 1965)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The protest herein challenges the tariff classification of certain imported merchandise described on the invoice as a "Cold Straightener Type KR 100 ST." It is a machine for straightening crooked or bent round pipes or tubes of a diameter up to 2¾ inches.

The machine was classified under the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on

1

Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and assessed thereunder with duty at the rate of 15 per centum ad valorem.

The plaintiff contends the merchandise is classifiable as a machine, not specially provided for, under paragraph 372 of the said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, with duty at 11½ per centum ad valorem; or, in the alternative, as an article with an essential electrical feature under paragraph 353 of the said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, with duty at 13¾ per centum ad valorem. This claim, not having been pressed, is deemed abandoned.

Plaintiff had a second alternative claim for classification of the article as a welding machine under paragraph 353 of the said tariff act, but abandoned this claim at the trial.

The statutory provisions of the tariff act pertinent to the issue herein read as follows:

Paragraph 372, Tariff Act of 1930:

* * * machine tools, * * * *Provided further,* That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

Paragraph 372, as modified by T.D. 51802:

Machine tools (except jig-boring machine tools) _____ 15% ad val.

Paragraph 372, as modified by T.D. 54108:

Machines, finished or unfinished, not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other (* * *)_____ 11½% ad val.

Two exhibits were introduced into the record. Plaintiff's exhibit 1, referred to in the record and defendant's brief as a "schematic drawing," was described by the plaintiff's witness as an "arrangement drawing." This variation in description of exhibit 1 is not significant. Defendant's exhibit A is a pamphlet picturing the machine and its parts with a description thereof and an explanation of its operation.

The plaintiff called one witness, Joseph Gaus. He testified that, for the past 7 years, he was special assistant to the vice president of Engineering & Sales, and that his duties constituted work in engineering which assisted in detail work for the plaintiff herein, Mannesmann-Meer, Inc., producer of tube mill machinery. He identified the imported merchandise from the invoice as the tube straightener here involved.

He explained the operation of the machine with the aid of the arrangement drawing (plaintiff's exhibit 1). This apparatus was approximately 5 feet long, 4 feet high, and occupied a depth floor space of about 7 feet. The witness, by marks on plaintiff's exhibit 1,

indicated where the pipe or round article entered through a funnel-like arrangement, marked "entry cannon," at the head of the machine.

The witness described the procedure as follows:

The tube or round article which enters the entry cannon goes under the first roller. It goes between the lower roller and the roller, the second roller. It goes under the third roller, passes over and between the bottom second roller and the fourth upper roller and continues under the fifth roller of the straightener.

Continuing his testimony, he explained that force is placed on the article, which rotates and goes through in a straight line, resulting in a straightening thereof. The rollers are offset at an angle which causes the product to continue to rotate as well as travel, and it is the force of the rollers alternately operating on the product which causes the straightening. Each tube or round product generally would be of a mill length of anywhere from 31 feet to 60 feet and would go through in a continuous process at a speed of between 500 and 600 feet per minute.

In response to his counsel's question, the witness stated that the straightener did not change the size or diameter of the tube in any way, that it did not change the shape of the tube itself, and that it did not have any tools that worked on metal as such.

Q. Well, if they don't work on the metal, what do the rollers do?—A. The rollers by pressure cause rotation of the product and longitudinal travel and by pressure. It straightens the product.

Q. Does the straightener contain any essential electrical features?—A. No, it does not.

Q. Can it be operated by any other source other than electricity?—A. Yes.

Asked to explain further how the machine operated, the witness stated it was by rotating motion into a gear reducer, which, in turn, drives the two lower row assembles. These lower straightener rollers are power driven; the upper rollers are not powered, but rotate when the product is pushed into the entry cannon.

The product for straightening is brought to the entry cannon by an inlet roll conveyor, which pressures or pushes the product in, where it is picked up by the lower powered roll and the top non-powered roll and carried through to the other end of the machine, where a powered outlet conveyor carries off the straightened product to a distant point in the mill.

In the opinion of the witness, the straightener was a mechanical apparatus, capable of using any source of power whether electric or hydraulic. Generally, electricity from a motor in the mill was used.

On cross-examination, the witness stated that most of his experience was with tube mill machinery, not with tubes as a product. The product or tubes generally were new merchandise from a welding mill or from storage which needed straightening before shipment to a customer.

He identified defendant's exhibit A, a brochure put out by Mannesmann-Meer, Inc., illustrating and describing the machine herein and its operation. He agreed with a statement made therein that bars and tubing usually are bent after hot finishing in the rolling mill and the only way to overcome the residual stresses by cold working is to bend the material in the opposite direction beyond its elastic limit. This was done by the straightener.

He further testified that these are finished tubes put through the apparatus to remove the bends or kinks in the tubes. This is done by pressure exerted by the rollers. The rollers come in direct contact with the product. The witness admitted that the machine herein straightened out the bends, but would not admit that this constituted shaping the tube. In answer to a question from the court, he stated that he considered the straightening of the merchandise a part of the manufacturing process.

Asked also by the court for his definition of a machine tool, he answered:

A machine tool is a tool which changes the shape or size or length of a product.

The witness contended that the machine herein was not a machine tool, because it does not change the actual shape and length of the product; it merely straightens the product. In his opinion, the apparatus does not machine the tube in any way and it does not have a tool for work on metal, and the only function of the machine is to straighten the product to make it salable.

The sole issue herein is whether the tube straightener at bar is embraced by the definition of machine tools within the meaning of paragraph 372 of the Tariff Act of 1930, as modified.

The plaintiff, in its reply brief, cites for support the case of *United States* v. *Kurt Orban Co., Inc.*, 47 CCPA 28, C.A.D. 724, conceding that the machine is equipped with tools, but that they do not work on metal within the meaning of the tariff definition of machine tools.

Plaintiff, in its brief, contends first that the words "work on metal" imply:

* * * those tools that work or shape the metal itself by milling, shearing cutting, sawing, hammering, drilling, scraping, etc.

Again quoting from the *Kurt Orban* case, *supra*, plaintiff sets out in its reply brief:

* * * Typical basic machine tools are the lathe which revolves the work while a cutter is held against it; the planer, which moves the work forward and back under a planing tool; the drilling machine for drilling holes; the miller, in which the work is shaped by the action of revolving toothed cutters, and the grinding machine, in which abrasive wheels are used to remove metal. * * *

It is obvious that none of the above exemplars even remotely resemble the unit at bar.

The *Kurt Orban* case, *supra*, however, is distinguishable from the case at bar. There, the machine involved was a baler of scrap metal. Scrap was dumped into an assembly chamber, then pushed into a compression chamber, where it was compressed into smaller bundles for more convenient handling. This was the prime function of the baler. This was distinguished from the machine tools in other cases wherein the primary function of the device was to perform an operation upon metal in order to improve and advance its status for further use. This court held the baler was dutiable under paragraph 372 of the Tariff Act of 1930 as a machine, not specially provided for, rather than as a machine tool.

Taking some pertinent language from the foregoing paragraph, the operation of the tube straightener in the instant case might be well described as "an operation upon metal in order to improve and advance its status for further use," thus identifying it as a machine tool within paragraph 372 of the said tariff act.

Some brief comment might be warranted on plaintiff's argument, in its brief, that a machine that has more than one tool is not a machine tool. This court cannot accept that Congress, in framing the statute, had any such intent. The situation is elementary and the argument without merit when considered, for example, in the light of the rolling mill cases cited, *infra*.

Examination of the cases cited by the defendant brings to attention *John L. Vandiver* v. *United States*, 34 Treas. Dec. 200, T.D. 37555. The merchandise there was a cold rolling mill. The question to be determined was whether the rolls which worked directly on the metal were "tools" in the sense used in the tariff act. It was held that the rolls in question, the function of which was to form and shape metal, were tools, and that such tools, when constituting part of a machine which works upon metal, rendered the whole machine classifiable as a machine tool within the statutory definition of the tariff act.

In *Alex. Benecke* v. *United States*, 30 CCPA 55, C.A.D. 214, which also involved rolls in a rolling mill, the court succinctly set forth in the syllabus the following:

* * * under the doctrine of legislative ratification of judicial interpretation, this case is controlled (as was held by the trial court) by the decision of the Board of General Appraisers (now the United States Customs Court) in the case of *John L. Vandiver* v. *United States*, T.D. 37555, 34 Treas. Dec. 200, wherein a complete rolling mill was held to be a machine tool, under the legislative definition of the term "machine tools" stated in the 1913 tariff act and reiterated in the Tariff Acts of 1922 and 1930, respectively.

In the instant case, among the pertinent sections of the testimony materially significant to the issue, are these:

The rollers of the straightening machine herein come into direct contact with the metal tube which is to be straightened; the rollers straighten out the bend in the said tube by pressure thereon; the lower powered rollers, harmonizing with the upper unpowered rollers, cause the tube to rotate and travel through the straightening machine, the bends are thus removed, and a straight product emerges from the machine.

The witness admitted that this was a part of the manufacturing process, but avoided any admission by his answers to questions of counsel that the machine changed the shape of the product. The accuracy or inaccuracy of these assertions must be appraised against the preponderance of facts *contra* in the record itself. It would be inconsistent to admit that the bend in the metal tube is straightened out, but deny that the shape is not involved.

Some further enlightenment may be had by resort to a dictionary (Funk & Wagnalls New Standard Dictionary of the English Language, 1956) for a meaning of the word "bend." There, we find "bend" defined, to "take a curved shape." One may reasonably deduce, therefore, that a bend and the straightening thereof relate to shaping.

In the light of our analyses of cited cases, *John L. Vandiver* v. *United States*, *supra*, and *Alex. Benecke* v. *United States*, *supra*, and the numerous cases cited therein, and based upon the record in the instant case, it is the opinion of this court that the tube straightener at bar is a machine tool within the meaning of paragraph 372 of the Tariff Act of 1930. The protest claims of the plaintiff are, therefore, overruled and the classification of the collector is affirmed.

Judgment will be rendered accordingly.