**PACIFIC SUPPLIERS, LTD., and American Customs Brokerage Co., Inc.,**

v.

**UNITED STATES.**

**C.D. 3819; Protest Nos. 66/70221–22175.**

United States Customs Court,
Second Division.

May 6, 1969.

---

2. In view of this conclusion, it is unnecessary to reach the question as to whether a meter iris is itself an "apparatus."

Glad & Tuttle, Los Angeles, Cal. (Edward N. Glad and Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen. (Andrew P. Vance and Owen J. Rader, New York City, trial attorneys), for defendant.

Before RAO, FORD, and NEWMAN, Judges.

FORD, Judge:

This protest places in issue the classification of certain free standing cast iron ingot molds. The importations were classified under the provisions of item 674.10, Tariff Schedules of the United States (hereinafter referred to as TSUS), as ingot molds and assessed with duty at the rate of 9 per centum ad valorem. Plaintiffs claim that the articles in question are properly classifiable as non-malleable cast iron articles pursuant to item 657.09 of the TSUS and should be assessed with duty at the rate of 3 per centum ad valorem.

The relevant statutory provisions read as follows:

674.10    Converters, ingot molds, and casting machines, all the foregoing of types used in metallurgy and in metal foundries, and parts thereof ......................9% ad val.

Articles of iron or steel, not coated or plated with precious metal:
    Cast-iron articles, not alloyed:
657.09         Not malleable .................3% ad val.

———◆———

Full testimony regarding the nature and use of the importations was offered by three witnesses on behalf of the plaintiffs. They were Albert Furuya, assistant secretary-treasurer of Pacific Suppliers, Ltd., the importers herein; Charles Meikle, head melter at Hawaiian Western Steel, user of the molds in question and Shoji Fujimoto, assistant chief of the ingot mold section of Kubota Iron & Machinery Works, Ltd., the manufacturer of the merchandise in issue.

Although the issues in this case are primarily legal in nature, the testimony regarding the imported molds is informative and useful. It establishes that the molds in question are ingot molds, approximately 5 feet 5 inches in height and weighing approximately 474 pounds. They were made in Japan by Kubota to the specifications of Hawaiian Western Steel for use in the production of steel which, it is generally agreed, constitutes an involvement in metallurgy. A photostatic copy of the blueprint drawing of the ingot mold in question was introduced in evidence as plaintiffs' exhibit 1. In addition, photographs of molds such as the one in issue standing alone, in groups and receiving molten metal from a converter, were introduced in evidence as plaintiffs' illustrative exhibits 2, 3, and 4. The molds in question are designed to be freestanding, as distinguished from certain ingot molds which are designed to be attached in rows to the moving belt or platform of a casting machine (depicted in photographs introduced in evidence as plaintiffs' illustrative exhibit 7) and still others which give form to the unbroken strip of metal emerging from a continuous casting machine (depicted in a schematic drawing introduced in evidence as plaintiffs' illustrative exhibit 6).

Testimony was also offered to the effect that the function of a converter is to convert liquid pig iron into steel and that said converter contains a mold as an integral part. An illustration of the converter's mechanism was introduced

into evidence as plaintiffs' illustrative exhibit 5.

It was stipulated between the parties that had the importations been classifiable under the Tariff Act of 1930, the commodity specialist would have advisorily classified it under paragraph 327 of said act, providing for castings and vessels wholly of cast iron.

■ Plaintiffs' claim, made in the face of a provision which appears to provide explicitly for the articles in question, is based entirely on legislative history and although we are not ordinarily inclined to enter into an examination of such a nature in connection with unambiguous language, we are aware that in certain instances a literal reading of the statute can be in conflict with the intent of Congress, Proctor & Gamble Manufacturing Co. v. United States, 19 CCPA 415, T.D. 45578, or that words may have been employed with a meaning different from that commonly attributed to them. Ozawa v. United States, 260 U.S. 178, 43 S.Ct. 65, 67 L.Ed. 199; Acheson v. Fujiko Furusho, 9 Cir., 212 F.2d 284. It is therefore out of a scrupulous desire to avoid such an occurrence that we undertook a study of the legislative history of this provision. This study, however, revealed no support for a classification other than that given to the importations, uncovered no intent of Congress contrary to that contained in the plain language and no ambiguity in the use of the phrase "ingot molds."

Plaintiffs' basic assertion is that the intent of Congress was to include in item 674.10 only such articles as were machines or parts of machines and hence the ingot molds named therein were meant to be only those which were parts of converters or casting machines. It would follow from this line of reasoning that the instant molds, being unattached articles and not parts would be classifiable under item 657.09 which is the TSUS continuation in part of paragraph 327.

In support for this restrictive view of the term ingot molds, plaintiffs offer the following analysis of legislative history: That it was the general intent of Congress to reduce the scope of so-called "basket" provisions of the 1930 Act; that in keeping with this general intent a large number of specific new provisions such as item 674.10 were created for machines and parts which had formerly been indiscriminately lumped together under paragraph 353 as articles having as an essential feature an electric element or device or under paragraph 372 as machines not specially provided for; that it was the intention of Congress to confine the ambit of these new provisions derived from paragraphs 353 and 372 to machines and parts and to exclude other articles. Plaintiffs contend that this view is reinforced by the Tariff Commission's explanatory notes to part 4 of schedule 6 and by the improbability that Congress would change the classification followed under the 1930 Act without an express indication to that effect. Plaintiffs also draw attention to the fact that the title of subpart F containing the item under which the importation was classified is "Machines for Working Metal, Stone, and Other Materials" and to the fact that the rate of duty for item 674.10 is stated in the explanatory notes of the Tariff Commission to be the result of an approximate arithmetical average of the existing rates in paragraphs 353 and 372. Finally, plaintiffs cite the maxim of *noscitur a sociis* to suggest that the phrase "ingot molds" as used in item 674.10 must have the character of a machine or machine part which character is dominant in the articles with which it is associated in that provision and subpart.

It is indeed correct that Congress intended to reduce the scope of the "basket" provisions of the 1930 Act. This is made abundantly clear by material such as the following from the Tariff Classification Study Submitting Report, part II, section 4, page 15:

4. *The similitude provision and other basket" provisions*

The Tariff Act of 1930 has a number of provisions which are popularly

referred to as "basket" or "catchall" provisions. These provisions are expressed in general terms which usually include the clause "not specially provided for." Many of these basket or catchall provisions include heterogeneous groups of significant classes of articles. In the proposed schedules an attempt has been made to divest these baskets of these articles by the creation of many new classes, the provisions for which have been assimilated in the appropriate parts and subparts of the schedules. * * *

It is also correct that in keeping with this general intent, a large number of new provisions, including item 674.10, were created to govern machines and parts which had previously been classified under the basket provisions of paragraphs 353 and 372. This was clearly expressed in the explanatory notes to the Tariff Classification Study, Schedule 6, part 4, pages 257, 260:

Part 4 covers machinery and mechanical equipment and certain related articles. In the existing tariff act, the articles in this part are provided for principally in paragraphs 353 and 372 although certain machines are classified in a number of other provisions such as paragraphs 339 and 360 of the dutiable list and in paragraphs 1604, 1643, and 1791 of the free list.

* * * In the 9 subparts of this part and elsewhere in the proposed schedules, an effort has been made to provide specifically for the important classes of machines, and thereby reduce the "basket" provision to a manageable size. In each of the proposed items derived from both of the above-mentioned conflicting provisions of paragraphs 353 and 372, the conflict has been settled by abandonment of the unrealistic distinction involved.

The proposed provisions with respect to parts of machinery are uniform in principle and are more complete and realistic. Specific provisions have been included for a number of the more frequently used components of machinery. · For example, there are specific provisions in part 3 for all screws, nuts, bolts, springs, saw blades, interchangeable tools for machine tools, and chains used for the transmission of power; and in this part, for boilers, non-electric motors, other general-purpose machinery, molds, taps, cocks, valves, bearings, pulleys, etc.; and in part 5 for electric generators, motors, capacitors, resistors, electronic tubes, transistors, etc. Many of the articles covered by the specific provisions for particular parts are variously classified at the present time in a number of conflicting provisions for "parts" of certain articles and in a number of "basket" provisions usually on the basis of the component material of chief value.

■ We find no support however for plaintiffs' subsequent assertion that since item 674.10 is derived from paragraphs 353 and 372, its scope is restricted to that of its predecessors and it cannot govern articles which are not machines or parts of machines or, put another way, that any article added to item 674.10 must conform to the characteristics of the remaining articles. It does not follow from the fact that paragraphs 372 and 353 were sources of item 674.10 that Congress could not have intended to include an article in the new legislation which article was not within the ambit of the old especially when such article is specifically named.

■ It must be kept in mind that the TSUS is not merely a restatement of the Tariff Act of 1930 with discrepancies between the two settled by the controlling and determinative effect of the latter. Rather the TSUS is as thorough and comprehensive an amendment as that which any legislation has undergone. As such, we must ordinarily construe it as if the original statute had been repealed and an independent act adopted in its stead. Accordingly, it is more accurate and useful to view paragraphs 353 and 372 as providing the motivation for the creation of certain new provisions and not as defining the scope

of such new provisions. We are of the opinion that plaintiffs have mistaken the explanation of the Tariff Commission regarding the problems posed by the old basket provisions and the solutions represented by the new provisions for expressions of an exclusive linkage between the two with implicit restrictions on the new law. Such is not the case and we find no express support for the proposition that the plain language of ingot molds was intended to mean only ingot molds which are parts of machines.

The Tariff Commission's explanatory notes to the part in question, quoted extensively, *supra*, indicate said part 4 covers machinery and mechanical equipment and certain related articles. The ingot molds in question can accurately be described as related articles. Significantly, no mention is made in the introductory material of any restrictiveness in the use of the term ingot molds, which mention might have been expected in light of the listing in the Brussels Nomenclature, discussed, *infra*. Furthermore, the discussion in the introductory material of "Components of machinery" is broad enough in its language and examples to include the molds in question.

The explanatory notes to the Brussels Nomenclature, which nomenclature is acknowledged as a principal source of the tariff classification adopted in the TSUS, contain in section 84.43, provision for converters, ladles, ingot molds, and casting machines of a kind used in metallurgy and in metal foundries. The language pertaining to ingot molds is as follows:

### (C) INGOT MOULDS

These are moulds in which the molten metal is provisionally cast into rough blocks for further working or for re-melting as required. Other moulds (e.g., for casting articles) are excluded (heading 84.60 in general).

The moulds of the present heading are of metal, usually iron or steel.

They may be of various shapes, in one piece or two halves. Ingot moulds of carbon or graphite or of ceramic material are, however, excluded (heading 68.16 and 69.03 respectively).

The language does not appear to draw a distinction between ingot molds which are free standing and those which are parts of machines and to the extent that it served as a guide to the drafters of the TSUS, and is reflected in item 674.-10, it would appear that such a distinction was not introduced by Congress.

We give no weight whatsoever to the titles of parts and subparts in keeping with the TSUS General Interpretative Rule 10(b) providing that "the titles of the various schedules, parts, and subparts and the footnotes therein are intended for convenience in reference only and have no legal or interpretative significance * * *."

In addition the establishment of a rate of duty for item 674.10 which is an average of the rates for paragraphs 353 and 372 is not relevant to the scope of the later legislation. It merely indicates a connection between the two which is far from being an indication of intent that the earlier control language of the later.

■ Admittedly, it appears that had the instant importations been subject to classification under the old law, it would have been classified pursuant to paragraph 327, the predecessor of the present item 657.09. In this respect the enumeration of ingot molds in item 674.-10 represented a change of tariff treatment which the mandate of the Tariff Commission required it to bring to the attention of Congress. The failure to do so does not however affect the scope of the new provision for ingot molds. When Congress adopted the proposed tariff schedules it is presumed to have ratified the actions of the Tariff Commission and acquiesced to the change represented by the inclusion of ingot molds in item 674.10. See F. L. Smidth & Company v. United States, 59 Cust. Ct. 276, C.D. 3141 (appeal pending). In a case involving an even more drastic

fact situation, this court stated that "if the tariff commission, without ambiguity, places in a dutiable item of TSUS an article that was formerly free, while representing, mistakenly perhaps, in explanatory material, that the item makes no rate change, still, the unambiguous item must have its effect in this court." C. S. Emery & Company, W. A. Gleeson v. United States, 57 Cust.Ct. 217, C.D. 2767.

Finally, if we were to accept plaintiffs' view that the ingot molds named are limited to those which are parts, there would be no need to mention them at all specifically since the item provides for parts of converters and casting machines. Accordingly, we incline to an interpretation which gives meaning and utility to all the statutory language and avoids the implication of superfluity. Henry Clay & Bock & Co., Ltd. v. United States, 42 Cust.Ct. 160, C.D. 2081.

■ In the end little can be said in support of plaintiffs' position. The plain meaning of the statutory language cannot be overcome by strained processes of deduction from uncertain and tangential legislative material. Ex Parte Collett, 337 U.S. 55, 69 S.Ct. 944, 959, 93 L.Ed. 1207. The ingot molds in question are unmistakably provided for by name and our study of legislative history has revealed no ambiguity, no uncertainty and no legislative intent to the contrary.

The rule of *noscitur a sociis* is not properly invoked in this situation. As was cogently stated in Russell Motor Car Co. v. United States, 261 U.S. 514, 43 S. Ct. 428, 67 L.Ed. 778:

* * * "*Noscitur a sociis*" is a well-established and useful rule of construction where words are of obsure or doubtful meaning, and then, but only then, its aid may be sought to remove the obscurity or doubt by reference to the associated words. Virginia v. State of Tennessee, 148 U.S. 503, 519, 13 S.Ct. 728, 37 L.Ed. 537; Benson v. Chicago, etc., Ry. Co., 75 Minn. 163, 77 N.W. 798. But here the meaning of the words considered severally is not in doubt, and the rule is invoked not to remove an obscurity but to import one. * * *

■ In light of the above, we find that the instant molds were properly classified as ingot molds pursuant to item 674.10 of the TSUS and were correctly assessed with duty at the rate of 9 per centum ad valorem.

Judgment will issue accordingly.

RAO, C. J., and NEWMAN, J., concur.