400

BRODERICK & BASCOM ROPE CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 29, 1970)

*Bryan, Cave, McPheeters & McRoberts* (*William D. Crampton* and *Kay Ellen Thurman* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*John Winters* and *Morris Braverman,* trial attorneys), for the defendant.

Before RAO, FORD, and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise of these three protests, consolidated for trial, consists of three wire stranders which were imported into the United States at various times from England and

classified in liquidation as metal-working machine tools—other, under item 674.35 of the Tariff Schedules of the United States at the duty rate of 15 per centum ad valorem. Plaintiff-importer claims that the merchandise should be classified as cordage machines under item 670.90 of the tariff schedules at the duty rate of 12 per centum ad valorem. The competing tariff provisions read as follows:

Schedule 6, Part 4, Tariff Schedules of the United States:

[Classified]

SUBPART F. – MACHINES FOR WORKING METAL, STONE, AND OTHER MATERIALS

\*      \*      \*      \*      \*      \*      \*

    Machine tools:
        Metal-working machine tools:

\*      \*      \*      \*      \*      \*      \*

674.35        Other _____15% ad val.

[Claimed]

SUBPART E. – TEXTILE MACHINES; LAUNDRY AND DRY CLEANING MACHINES; SEWING MACHINES

\*      \*      \*      \*      \*      \*      \*

670.90    Cordage machines and parts thereof_____ 12% ad val.

This case presents basically a question of law inasmuch as the essential facts of the controversy do not appear to be in dispute. Ashton Eugene Glick, chief engineer for the plaintiff company who was called as a witness on plaintiff's behalf, testified that the machines in question [consisting of two 25 bobbin stranders and one 6 bobbin strander] are used in the process of manufacturing wire rope. Making reference to the 6 bobbin strander, the witness testified that it is used to produce wire strands or small wire ropes, samples of which were placed in evidence as plaintiff's exhibits 3 and 17. He stated that the machine is operated by filling the seven bobbins with wire and leading the wires through guides along the length of the machine to the compacting die at its head, that when the action is tripped, six of the wires are compacted about the seventh, or core, wire to form a strand, and that the strand is then wound on a reel stand on another bobbin.

Mr. Glick also testified that the external contours of an individual wire are not changed by the compacting process, that there is no shaving or other removal of material from the wire and no change in the dimensions of the wire, that there is twisting of the wire to compact it with other wires, and that the principal use of such strand-

ing machine is to make strands of wire which have an end use in the production of wire rope.

Prescott A. Smith, Professor of Mechanical Engineering and manager of the machine tool laboratory at the Massachusetts Institute of Technology, also called as a witness on plaintiff's behalf, testified that in his opinion machine tools are articles which are capable of making parts that could be used in the construction of machines or other machine tools. He testified that he had observed two of the three involved stranders in operation and had examined their structure and components. And in his opinion, based upon his knowledge of and experience with machine tools, the stranders are not machine tools because they lack the capability of making machine parts for use in constructing other machine tools or machines.

Plaintiff contends, on the strength of the evidence thus summarized, that the involved stranders are not machine tools because they are not described by the language of the tariff schedule headnotes and were not intended by Congress to be classified as machine tools, and that even if they are machine tools they are more particularly described as cordage machines. Defendant contends that the stranders are not cordage machines within the purview of item 670.90 because that provision is limited to cordage machines working with textile fibers, and that even if they are cordage machines under such tariff provisions they are more particularly described as machine tools.

We are of the opinion that the involved stranders are machine tools within the purview of item 674.35, and are not cordage machines within the scope of item 670.90.

Subpart F headnote to item 674.35 of the tariff schedules reads in part:

> 1. For the purposes of this subpart—
> (a) the term *"machine tool"* means any machine used for shaping or surface-working—
> (i) metals (including metallic carbides);
>
>     *     *     *     *     *     *     *
>
> whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it. . . .

This language is broad in scope, and is intended by Congress to embrace machinery other than that contemplated under the more restricted definition of "machine tool" to which the witness Smith addressed himself in this case. And the strander, whose avowed purpose is to "twist" metal wire into strands, clearly comes within the broadened definition of the term "machine tool" as set forth in this headnote.

Moreover, plaintiff admits that under the 1930 Tariff Act cordage machines were included in the predecessor provision for "machine

tools" of paragraph 372. (See page 14, plaintiff's brief.) And this admission undoubtedly has reference to machines working with metal wire, inasmuch as cordage machines using textile fibers have long been classified under the basket clause in predecessor paragraph 372 provisions for "all other machines or parts thereof". See *Whitlock Cordage Co.* v. *United States*, 13 Ct. Cust. Appls. 656, T.D. 41490 (1926), construing paragraph 372 of the 1922 Tariff Act which also contained a provision for machine tools. And in considering the provision for "machine tools" in paragraph 372 of the 1922 Act (H.R. 7456), Congress had the benefit even then of a broadened viewpoint of the scope of the term. The Tariff Commission, under the heading "STEAM ENGINES, STEAM LOCOMOTIVES, MACHINE TOOLS, ETC.", reported to Congress (Summary of Tariff Information, 1921, pages 504–505) :

> . . . The term "machine tools" has no very definite or fixed meaning. One class of power-driven machines is designed to produce a single type of article in great numbers with a considerable degree of automatic action, i.e. screw-making machines, bolt threaders, nut tappers, gear cutters, and spring-making machines. These are styled "special" machines. They usually turn out a completed product or one requiring little subsequent finishing. The other class, properly called machine tools, consists of power-driven forming or shaping machines which are not special, but are adaptable for all kinds of work within their sphere on all shapes of metal stock or raw material. Machine tools are so defined in the act of 1913 as to include both the above classes.

> "Metal-working machinery" is a term applied to power-operated machines for working metals in the form of bars, rods, *wire*, plates, sheets, or casting, but excluding machinery used in the production of the metal in the forms mentioned. . . . [Emphasis added.]

In our opinion the definition of "machine tools" as written into the subpart F headnote to item 674.35 preserves this breadth of treatment of the term, which is reflected in this Tariff Commission report. And a machine which works wire by means of bending processes, as does the strander at bar, is as much at home with the concept of metal-working machine tools as is a machine which works other forms of metal by means of bending processes. *Cf. Mannesmann-Meer, Inc.* v. *United States*, 55 Cust. Ct. 1, C.D. 2546 (1965), involving the bending of pipe through the use of a machine held to be a machine tool.

Neither do we think that Congress intended to include the involved stranders within the term cordage machinery as used in item 670.90. While there is some indication in the *Tariff Schedules Classification Study* notes to which attention is called by plaintiff which evidences an awareness on the part of the Tariff Commission of the fact that cordage machines work with yarn, wire, and other materials, still we

regard this circumstance as being only an abstract or general reference to the nature of the machine in its total dimensions. But the overwhelming preoccupation of the Tariff Commission here, when its total notes on the subject are viewed in context, is whether or not cordage machines properly came within the scope of the initially proposed superior heading provision for "other textile machines for producing yarns or cordage", it being the intention of the Tariff Commission to concern itself only with textile and certain related machines under subpart E. See *Tariff Schedules Classification Study* notes, schedule 6, pages 267–268. And with the subsequent deletion by the Tariff Commission of the term "cordage" from this superior heading in the final draft, the Tariff Commission came to the conclusion, previously arrived at by the courts, that cordage machines using textile yarns are not textile machines. See *Whitlock Cordage Co.* v. *United States, supra.*

Another factor which militates against any notion that the Tariff Commission intended to include wire rope machinery within the term "cordage machinery" under item 670.90 is the absence of any discussion in its notes of rate changes which such a proposed amalgamation would have entailed. See *Tariff Schedules Classification Study*, schedule 6, pages 250, 252. Under the predecessor paragraph 372 provision for "all other machines and parts thereof" under which textile cordage machines were then being classified the rate of duty was 12½ per centum ad valorem. But under the companion provision for "machine tools" under which cordage machines using wire were then being classified the duty rate of this predecessor paragraph 372 provision was 15 per centum ad valorem. And in its notes the Tariff Commission indicates that the duty rate of 12½ per centum obtaining for cordage machines under paragraph 372 remained the same in the switchover to item 670.90, thus further indicating that the Tariff Commission was only concerned with textile cordage machines. This rate had been reduced to 12 per centum at the time of the involved entry.

In view of this conclusion respecting the intention of Congress *vis-a-vis* the Tariff Commission in the enactment of item 670.90 of the tariff schedules, it becomes unnecessary for us to consider other arguments advanced by the parties in the briefs which we do not reach, with respect to Congressional intent and relative specificity between competing tariff provisions. And it follows for the reasons stated, and we conclude, that plaintiff has failed to present evidence sufficient to rebut the presumption of correctness attaching to the classification of the involved merchandise, in consequence of which, the protests herein are overruled.

Judgment will be entered accordingly.