# 1070

59 CCPA

**BRODERICK & BASCOM ROPE COM-
PANY, Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 5449 C.A.D. 1053.**

United States Court of Customs
and Patent Appeals.

June 1, 1972.

William D. Crampton, attorney of
record, for appellant; Bryan, Cave,

McPheeters & McRoberts, St. Louis,
Mo., of counsel.

L. Patrick Gray, III, Asst. Atty. Gen.,
Washington, D. C., Andrew P. Vance,
Chief, Customs Section, New York City,
John A. Winters, Staten Island, N. Y.,
for the United States.

Before RICH, ALMOND, BALDWIN,
LANE, Judges, and RE, Judge, United
States Customs Court, sitting by desig-
nation.

BALDWIN, Judge.

This appeal is from the decision and
judgment of the United States Customs
Court, Second Division,[1] overruling ap-
pellant's protest against the classifica-
tion of wire stranding machines import-
ed from England. The importations
were classified under item 674.35,
TSUS, as metal-working machine tools.
Appellant claims that classification
should have been under item 670.90,
TSUS, as cordage machines.

The imported stranders are machines
used in making wire rope. Individual
wires to be made into a strand are re-
ceived on separate bobbins which fit
into the machine. The wires are drawn
from these bobbins through a compact-
ing die which gathers them together to
form a strand, which is then wound onto
another bobbin. The operation involves
some twisting of the wires but there is
no removal of material from the wires
and no change in the dimensions of the
wires.

The pertinent portions of the Tariff
Schedules appear in Schedule 6, Part 4:

Subpart E.—Textile Machines; Laundry and
Dry Cleaning Machines; Sewing
Machines
\*      \*      \*      \*      \*      \*      \*
Item
670.90   Cordage machines and parts
thereof ................ 12% ad val.
\*      \*      \*      \*      \*      \*      \*
Subpart F.—Machines for Working Metal,
Stone, and Other Materials
Subpart F headnotes:
1. For the purposes of this subpart—
(a) the term *"machine tool"* means
any machine used for shaping or sur-
face-working—

I.  65 Cust.Ct. 400, C.D. 4112 (1970).

(i) metals (including metallic carbides);

\* \* \* \* \* \* \*

whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it \* \* \* .

\* \* \* \* \* \* \*

Machine tools:
   Metal-working machine tools:

\* \* \* \* \* \* \*

Item
674.35  Other ................... 15% ad val.

The Customs Court held both that the imported machines are machine tools under item 674.35 and that they are not classifiable as cordage machines under item 670.90.

Appellant contends that Congress and the Tariff Commission intended item 670.90 to cover all forms of cordage machines, including those which, like the machines at bar, handle wire. It is pointed out that in the revision of Schedule 6 first proposed by the Tariff Commission, cordage machines were included in a superior heading under Part 4, Subpart E, which read:

> Machines used to prepare natural or man-made fibers, or combinations thereof, for spinning, for use as stuffing, or for the manufacture of non-woven felts or wadding; spinning machines, twisting machines, doubling machines, and other textile machines for producing yarns *or cordage.* [Emphasis added.] [2]

After hearings, the commission submitted Subpart E in modified form with the words "or cordage" omitted from the proposed superior heading quoted above. Cordage machines were provided for in a new superior heading, item 670.90, at a duty rate of 12½ percent ad valorem. The commission's explanatory notes refer to this change as follows:

> The superior heading as published for public hearing included cordage machines. On further consideration, it is believed to be inappropriate to

include cordage machines in this superior heading. Such machines are of special design for working with *yarns, wire, or other materials* to produce *rope, cable* and *other cordage.* In the circumstances, they are provided for separately in item 670.90 at the rate of 12.5 percent ad valorem which is the rate currently applied under paragraph 372. Cordage machines containing an essential electrical element are currently dutiable under paragraph 353 at the rate of 15 percent ad valorem. In recent years, approximately 95 percent of imports have been at the lower rate in paragraph 372. [Emphasis added.] [3]

Appellant also urges that the stranders are not machine tools because they do not meet the description in Schedule 6, Part 4, Subpart F headnote 1(i), *supra.* Specifically, it points out that the stranders do not remove any part of the wires. Appellant contends that what twisting they do impart is merely secondary to the primary function of compressing the wires into a strand, which is not "shaping or surface-working" within the meaning of the headnote. For the latter proposition, it cites United States v. Kurt Orban, 47 CCPA 28, C.A.D. 724 (1959).

In addition, appellant contends that if both the cordage machine and machine tool provisions apply to the stranders, the former provision is more specific and should govern under General Interpretative Rule 10(c). [4]

### Opinion

The above quoted comments from the Tariff Commission Study explaining the elimination of cordage machines from the originally proposed superior heading and the creation of a specific provision for them in a coordinate heading in item 670.90 indicate that the term "cordage machines" includes machines that work

---

2. Tariff Classification Study, Schedule 6, p. 453 (1960).

3. *Id.,* at 268.

4. That rule provides that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision that most specifically describes it."

on wire and that item 670.90 was intended to include such machines. The Customs Court explained away any significance of the change and comments to the present issue. The court noted that cordage machines (which worked on textile yarns) were not considered as *textile* machinery but came under the description "other machines" in paragraph 372 of the predecessor 1930 Tariff Act.[5] The court further concluded that the commission's explanatory notes read as a whole evidenced an intention to restrict subpart E to textile and other related machines. We are of the opinion that the commission's comments quoted above clearly put forth the fact that cordage machines work with "wire, or other materials" as one reason for the change.

The court also stated that "cordage machines using wire" were classified as "machine tools" under paragraph 372 of the 1930 Tariff Act with duty at 15% ad valorem while "textile cordage machines" were assessed duty at 12½% ad valorem under the same paragraph. It regarded the absence in the comments under consideration of an indication that the provisions covering cordage machines using wire and textile materials were being combined as evidence that such a combination was not intended. However, the record does not establish that cordage machines working on metal were actually classified under the 1930 Act in the manner the court stated.[6] Moreover, the reference in the comments to cordage machines containing an essential electrical element as classifiable under paragraph 353 of that Act at 15% ad valorem appears to apply to such machines working with wire as well as those working with fibers and the change from that rate *is* explained. What is more important, it could hardly be expected that the commission could explain in full detail every change, or possible change, that inevitably would occur in performing the complex task of simplifying the tariff classifications.

■■ Appellee argues that inclusion of wire type cordage machines under Subpart E is illogical because "each item listed" under that Subpart "involves machinery whose principal purpose is to produce or process textile fibers or products." Appellee does admit one exception—the provision for footwear sewing machines. Wire cordage machines, which bear an obvious analogy to fiber cordage machines, are at most another exception, if indeed the exceptions do not completely disprove appellee's contention in the first place. Certainly the title of Subpart E does not establish any such rule since, under the terms of General Interpretative Rule 10(b), such titles are intended for convenience in reference only "and have no legal or interpretative significance." See Pacific Supplies, Ltd. v. United States, 62 Cust. Ct. 517, 299 F.Supp. 1134, C.D. 3819 (1969). We therefore think it clear that item 670.90 was intended to, and does, provide for wire cordage machines such as the present merchandise.

Turning next to relative specificity, the rule is that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it." [7] Applying the rule to the merchandise here, item 670.90 for cordage machines is unquestionably *more* specific than item 674.35 for machine tools, other. If the present wire stranders do fall within the description of the provision for machine tools, it must be because a broad interpretation is given to the terms "shaping or surface-working" and "by changing its shape and form without removing any of it" in the Schedule 6, Part 4, Subpart F headnote. That requirement *is* plainly less specific

---

5. *Cf.* Whitlock Cordage Co. v. United States, 13 Ct.Cust.App. 656, T.D. 41490 (1926), decided under the 1922 Act.

6. The Customs Court relied on an "admission" to that effect, but appellant disavows any such admission, and appellee points to nothing in the record to support the court on this point.

7. General Interpretative Rule 10(c), TSUS. See also United States v. Simon Saw and Steel Co., 51 CCPA 33, C.A.D. 834 (1964).

or definite than the description of the strander as a cording machine, which necessarily incorporates the requirement that the shape and form of the wires be changed to put them into the specific shape and form of a strand of wire.

Accordingly, the imported stranders do fit within the provision in item 670.-90, TSUS, for cordage machines and that item provides for them more specifically than would item 674.35. Hence the appellant's protest should have been allowed and no determination of whether item 674.35 also applies to the merchandise is necessary. The judgment of the Customs Court is reversed.

Reversed.