**MEGO CORP., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 74–19.**

United States Court of Customs and Patent Appeals.

Nov. 21, 1974.

Allerton deC. Tompkins, New York City, atty. of record, for appellant.

Carla A. Hills, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Steven P. Florsheim, New York City, for the United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal from the judgment of the Customs Court, 71 Cust.Ct. 53, C.

D. 4471 (1973), dismissing [1] appellant's action based on its complaint against the classification of its imported merchandise under item 737.90, Tariff Schedules of the United States, and the failure to classify said merchandise under item 734.20 or, alternatively, 734.15 or 735.20. We reverse and remand.

Schedule 7, Part 5, covers, among other things, Games and Toys. Subpart E provides as follows:

> *Subpart E headnotes:*
>
> 1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, but the provisions of this subpart do not apply to—
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> (iii) games and other articles in items 734.15 and 734.20, toy balls (items 735.09–.12), and puzzles and games in item 735.20 (see part 5D of this schedule).
>
> 2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> Toys, and parts of toys, not specifically provided for:
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;

| | | |
|---|---|---|
| 737.90 | Other | 35% ad val. |

Subpart D provides as follows:

| | | |
|---|---|---|
| 734.15 | Chess, checkers, pachisi, backgammon, darts, and other games played on boards of special design, all the foregoing games and parts thereof (including their boards); mahjong, and dominoes; any of the foregoing games in combination with each other, or with other games, packaged together as a unit in immediate containers of a type used in retail sales; poker chips and dice | 20% ad val. |
| 734.20 | Game machines, including coin or disc operated game machines and including games having mechanical controls for manipulating the action, and parts thereof | 11.5% ad val. |

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

| | | |
|---|---|---|
| 735.20 | Puzzles; game, sport, gymnastic, athletic, or playground equipment; all the foregoing, and parts thereof, not specifically provided for | 20% ad val. |

---

1. On defendant-appellee's motion at the close of plaintiff-appellant's case.

The merchandise is a miniature pinball article consisting of a tilted cardboard base, resting on two short pegs, and clear plastic sides and upper surface, and is approximately $\frac{3}{4}'' \times 14'' \times 8''$ in size. The cardboard surface depicts a spaceship-planet or baseball motif. Six small plastic balls are provided, which can be projected by a manually-operated spring mechanism or trigger into nine slots (numbered 400, 500, 600, 750, 800, 900, 1000, 1200, and 2000) or behind various barriers on the cardboard surface. It is designed for use by children from ages six to twelve.

The Customs Court, in dismissing the action, concluded as a matter of law that appellant had failed to establish, prima facie, that the imported merchandise was chiefly used as a game and had failed to overcome the presumption that it was chiefly used for the amusement of children or adults and was, therefore, properly classified as a toy under item 737.90.

As a general rule, the plaintiff in a customs classification case has a dual burden of showing that the classification by the Customs Service was incorrect and that the plaintiff's proposed classification is correct. Morris Friedman v. United States, 50 CCPA 53, 56, C.A.D. 819 (1963). According to this rule, if the record supported appellant's contention that the merchandise was not chiefly used for the amusement of children or adults and was, therefore, not a toy, the record would also have to support classification under item 734.20, 734.15, or 735.20 for appellant to prevail; and appellant could prevail by showing that the merchandise was chiefly used as a game, which would rebut the presumption of correctness that it was chiefly used for amusement of children or adults and was, therefore, a toy.

However, we do not believe the conclusions of the Customs Court or appellee's arguments correctly state appellant's burden. The Subpart E headnotes provide that games and other articles in 734.15 and 734.20 and puzzles and games in item 735.20 are *excepted* from the requirement of classification under Subpart E even though they are described in the provisions of Subpart E (e. g. "Toys"). Therefore, we conclude that appellant's burden is to show (not necessarily by chief use) that its merchandise is described in one or more of items 734.15, 734.20, or 735.20, and in which one of them it is most specifically described. See Broderick & Bascom Rope Co. v. United States, 59 CCPA 130, C.A. D. 1053, 460 F.2d 1070 (1972).

In our determination of whether appellant has sustained this burden, we direct our attention to the description in item 734.20, "games having mechanical controls for manipulating the action," because an examination of the article (importer's exhibits 1 and 2) and the testimony of record leave no question that the article has a mechanical control (manually operated spring mechanism) for manipulating the action.[2] Appellee argues that the phrasing of item 734.20, "[g]ame machines, including coin or disc operated game machines and including games having mechanical controls for manipulating the action," requires that appellant's article be a "machine." However, the legislative intent[3] derived from the Tariff

---

2. On the basis of the record, we agree with appellee that the merchandise is not a game played on a board of special design under item 734.15 under the doctrine of *ejusdem generis*, considering the *eo nomine* designations of chess, checkers, pachisi, backgammon, and darts. And the Tariff Classification Study (1960) states (Schedule 7, p. 287) that item 735.20 is a "basket" provision which covers games, puzzles, and sport equipment "not specially provided for elsewhere in the schedules." As our discussion discloses, we are satisfied that appellant's merchandise is specially provided for under item 734.20.

3. See Tariff Classification Act of 1962 (Pub.L.No. 87–456, 76 Stat. 72), Title I,

Classification Study (1960) and the First Supplemental Report thereto (January, 1962) clearly was otherwise. The Study (Subpart D, Part 5 of Schedule 7) proposed the following provision for item 734.20 (p. 264):

Game machines, including coin or disc operated game machines . . . and parts thereof

The First Supplemental Report recommended the following insertion before ", and parts thereof" (p. 80):

and including games having mechanical controls for manipulating the action

The following comments accompanied this recommendation:

The proposed change in the definition of "toy" might cause a significant change in the existing treatment of certain hockey games imported in substantial volume from Canada. These games have simple, mechanical controls for manipulating the hockey players, but might not be regarded as a game "machine". The foregoing change in item 734.20, together with the change in headnote 1 of part 5E [to except games and other articles in items 734.15 and 734.20] . . . will insure that the existing treatment of these games will be substantially continued.

The key question is whether appellant's merchandise is a "game," regardless of whether it is also a toy.[4] Both parties agree that the common meaning of "game" should be followed. Both cite various dictionary definitions which indicate that a "game" must be competitive or involve a contest, and must possess an element of skill, chance, or endurance.[5]

Although the only witness was the director of creative projects for appellant, his unrebutted testimony and an examination of the article clearly show that the objective is to get the balls into the highest numbered slots to make the highest score, so that the element of contest is present. The manual operation of the spring mechanism to trigger the balls gives the article an element of skill, and the barriers provide an element of chance. As the Customs Court said in Montgomery Ward & Co. v. United States, 66 Cust.Ct. 233, 238, C.D. 4195 (1971):

Of course, a game is necessarily a contest, but one which may be between two or more persons, or between one person and the game itself. For example, a slot machine can only be played by one person at a time . . . . A pinball machine can only be played by one person at a time and is a contest between man and machine which involves an element of skill, while the slot machine is essentially a game of chance. Darts can be played or practiced by one person alone simply as a test of skill of the player, with no necessity for an opposing player. All the above are "games" or "game machines" within the provisions for "games and sporting goods" in schedule 7, part 5, subpart D of the tariff schedules, and do not necessarily involve more than one person in their playing. The point is that these activities are games since they result

---

Sec. 101(b). United States v. Andrew Fisher Cycle Co., 57 CCPA 102, C.A.D. 986, 426 F.2d 1308 (1970); F. L. Smidth & Co. v. United States, 56 CCPA 77, C.A.D. 958, 409 F.2d 1369 (1969).

4. Appellee makes the following concession in its brief: "By virtue of Headnote 1 (iii) to Subpart E, Part 5, Schedule 7, TSUS, a 'toy game' is classifiable as a game."

5. The comments on Subpart E in the Tariff Classification Study (1960) include the following (Schedule 7, p. 291):

With respect to games and sports equipment, it is intended that only those articles of such character and quality as are ordinarily used in the serious pursuit of the game or sport are to be covered by the provisions for such game or sport equipment.

Flimsy construction would not appear to satisfy the quality requirement.

in a "score" measuring one's skill or luck or combination thereof against a given set of rules.

With respect to the construction of appellant's merchandise, the witness testified that the plastic cover, cups, and pegs are made of high-impact styrene— "just about the strongest plastic"; that the board is "not of an extremely good grade but fairly strong." Additionally, an examination of the article confirms that it is reasonably sturdy and is not of "flimsy" construction.

Appellee points out that the article was not accompanied by any instructions or rules for play, but it seems obvious that the contest would be to make the highest score with the six balls; moreover, no instructions would be needed for operating the spring mechanism. By its very design and construction, the article is directed to a contest or competition.

Appellee argues that the fact that the article has numbers which might be added to achieve a score, or, a score higher than one's opponent, "means nothing to a five to twelve year old who is unable to total a combination of four, three, and one digit numbers," and suggests that judicial notice be taken of "the fact that the average child, at least until age 11, cannot add up a combination of four, three and one digit numbers, with or without the aid of paper and pencil or pen." However, the court is inclined to take judicial notice that such average child *can* do so. Even if we were to adopt appellee's suggestion, however, such child would learn which slots were more important and would engage in a contest or competition on that basis.

Appellee also argues that appellant's witness was unable to recollect how he observed the merchandise being used during the relevant period. On the contrary, appellant's witness declared that he had seen the article being used "literally hundreds of times," and further testified as follows:

Q. Will you please explain how the article was being used in accordance with your observations and your sales experience?

A. As a contest; a game of skill. Two people play it or one person plays it to see how good he is at it.

.    .    .    .    .    .

Q. Where is it used, according to your knowledge and observations?

A. I've seen it used in homes; I've seen it used in front yards and on stoops; I've seen it used in our showroom, of course; and I've seen it used in stores.

Appellee further argues that the record shows that appellant failed to prove that the merchandise was chiefly used as a game, citing General interpretative rule 10(e)(i).[6] However, items 734.15, 734.20, and 735.20 are not "chief use" provisions. The comments on Subpart D, Part 5 of Schedule 7, in the Tariff Classification Study (1960) include the following (Schedule 7, pp. 287–288):

The classification problems connected with sports equipment and *games* and game equipment which may be *chiefly used for the amusement of children* are particularly troublesome. .  .  . Such equipment may be diminutive in size for use by children, such as a boy's baseball glove, but it would nevertheless be classified under these provisions so long as it was of a character *suitable for use* in organized play of these games. [Emphasis supplied.]

---

6. 10. *General interpretative rules.*—For the purposes of these schedules—
    (e) in the absence of special language or context which otherwise requires—
    (i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined; .  .  ..

Thus, even though an article may be "chiefly used" for amusement of children, it is nevertheless to be classified under Subpart D if it is a "game."

It is noteworthy that the Fifth Supplemental Report (1963) to the *Tariff Classification Study* (1960) recommended amendment of Subpart E headnotes to add puzzles and games in item 735.20, with the following comment (p. 53):

*Explanation*: This change is for clarification to fully reflect the intention that games provided for in item 735.-20 are not to be included in the provisions for toys.

In view of the foregoing and on the basis of the record before us, we hold that appellant has established a prima facie case that its merchandise is a game having a mechanical control for manipulating the action and, as such, is more specifically described in item 734.-20, TSUS.

The judgment is reversed. However, inasmuch as the judgment was rendered on appellee's motion prior to presenting its case, the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.