**COLECO INDUSTRIES, INC.**

v.

**UNITED STATES.**

**C.D. 4605; Court No. 73–8–02380.**

United States Customs Court.

Aug. 15, 1975.

Siegel, Mandell & Davidson, New York City (Brian S. Goldstein, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen. (Frank J. Desiderio, New York City, trial attorney), for defendant.

*On Plaintiff's Motion and Defendant's Cross-Motion for Summary Judgment*

MALETZ, Judge:

The question in these cross-motions for summary judgment is the proper tariff classification of a game called "Decision Football" that was imported from Canada via the port of Champlain, New York in 1972. Examination of the pleadings and an affidavit of plaintiff's corporate director of engineering establishes that there is no genuine issue of fact to be tried—and the parties so agree.

The customs decision complained of is the classification of the importation under item 734.15 of the tariff schedules,

---

as modified by T.D. 68–9, with duty assessed at the rate of 10 percent ad valorem. More specifically, item 734.15, as thus modified, provides in part:

> Chess, checkers, pachisi, backgammon, darts, and other games played on boards of special design, all the foregoing games and parts thereof (including their boards) ; * * * .............. 10% ad val.

---

Plaintiff in its complaint (par. seventh) alleges that "the merchandise in issue, in its condition as imported, though undisputedly a game played on a board of special design, is more specifically provided for under [i]tem 734.20" as modified by T.D. 68–9, and therefore dutiable at the lower rate of 5.5 percent ad valorem. Item 734.20, as so modified, reads as follows:

> Game machines, including coin or disc operated game machines and including games having mechanical controls for manipulating the action, and parts thereof ............................... 5.5% ad val.

---

There being no dispute that the imported merchandise is a game played on a board of special design within the meaning of item 734.15, the issues are (1) whether the merchandise is a game machine or a game machine including a game having mechanical controls for manipulating the action, and therefore within the ambit of item 734.20; and (2) if the merchandise is within the description of both item 734.15 and item 734.20, which provision more specifically describes the merchandise.

Turning to the record, the pleadings and affidavits establish the following facts: Plaintiff is the importer of record of the merchandise covered by entry nos. 124833, 124832, 124821, and 126468. The entries were liquidated in November 1972 and the liquidated duties have been paid. A timely protest was filed by plaintiff, and the summons herein was timely filed after denial of the protest.

The imported merchandise, "Decision Football," is a game which enables each player involved, without the knowledge of the other player, to set up one of five football play decisions such as a long pass, a short pass, an option play, an outside run or an inside run. The plays are accomplished by each player rotating a gear wheel affixed to a moveable gear track which is part of a plastic rectangular frame situated below the playing surface. When the plays are set, each player engages a button lighting bulb, which is part of the electrical system (battery operated) of the game which is attached to the moveable gear track frame.

By reason of the above-described action, the players can review the results of their game strategy, i. e., yardage gained or lost as recorded on a red translucent screen which is illuminated by a bulb associated with the integrated electrical system.

An additional feature of the merchandise in question, without which the game could not be played, involves the use of the "Action Quarterback" at such times as a kick would be normal in a football game (i. e., on a kick-off, punt, conversion after touchdown, and field goal). The ball is placed on the kicking tee near the right foot. The base of the player is held with one hand and with the other, the spring mechanism is manipulated in much the same manner as the spring mechanism on a pinball ma-

chine so as to project the ball in the direction of the goal posts.

Based upon the skill and dexterity of the particular player in manipulating the mechanical "Action Quarterback," the game tests the player's skill of manipulation and coordination and enables a player to compete for a high score or a win.

In this factual context, we consider first whether the merchandise is specifically provided for in item 734.20 as a game machine. On this score, the affidavit of plaintiff's affiant establishes that the "Decision Football" game contains a rudimentary analog computer; that it is a mechanical contrivance which utilizes, applies and modifies energy and force for the transmission of motion; that the inter-relationship of gears, input pinions, summing bar, summing points, slide, output indicator, input scale, electrical switches and circuit as operating moveable parts and the inter-related essential electrical system, qualify the game in issue as a machine within the scope of item 734.20.

The inter-related essential electrical system is worthy of note since it is that type of article, among others, which was intended for classification under item 734.20. Thus, the *Tariff Classification Study—Explanatory and Background Materials*, Schedule 7 (Nov. 15, 1960) p. 281, makes clear that item 734.20 was intended to provide, among other things, for game machines at the rate of duty of 13.75 percent ad valorem, the rate which was then applicable under paragraph 353 of the Tariff Act of 1930 to such game machines which contained as an essential feature an electrical element or device.

In view of the foregoing, it is concluded that "Decision Football" is a game machine within the scope of item 734.20.

Beyond this, by virtue of the issues raised by the parties in their briefs, the court deems it appropriate to determine whether, in addition to being a game machine, the imported merchandise comes within the provision of item 734.-

20 covering "Games machines * * * including games having mechanical controls for manipulating the action * * *." As to this, defendant asserts that "plaintiff has not established that the subject merchandise has mechanical controls for manipulating any 'action.'" Brief, p. 5. It further asserts that "[p]laintiff cannot, realistically, rely on the spring-activated 'Action Quarterback,' an article which is of infrequent use and of merely incidental importance to the board game in issue, in order to establish the prerequisite to classification under 734.20, *supra*, mechanical manipulation of action." *Id.*, p. 6. The argument, however, is devoid of merit. For as seen before, the record is uncontradicted that a feature of "Decision Football," without which the game could not be played, involves the use of the "Action Quarterback" at such times as a kick would be normal in a football game. Further, as discussed earlier, based upon the skill and dexterity of the particular player in manipulating the mechanical "Action Quarterback," the game tests the player's skill of manipulation and coordination and enables a player to compete for a high score or a win. The uncontradicted record, in short, is quite contrary to defendant's assertion that the "Action Quarterback" is of infrequent use and of merely incidental importance to the game. Moreover, it has previously been pointed out that the "Action Quarterback" has a manually operated spring mechanism which performs its function in much the same way as the spring mechanism on a pinball machine so as to project the ball in the direction of the goal posts.

Significant, in addition to the foregoing considerations, is the decision of the appellate court in *Mego Corp. v. United States*, 62 CCPA ——, C.A.D. 1137, 505 F.2d 1288 (1974). In that case, the court in reviewing the scope of item 734.20 relating to the phrase "games having mechanical controls for manipulating the action," rejected the government's contention that the merchandise must be a "machine." In this connec-

tion, the court stated (505 F.2d at 1290–1):

\* \* \* Appellee argues that the phrasing of item 734.20, "[g]ame machines, including coin or disc operated game machines and including games having mechanical controls for manipulating the action," requires that appellant's article be a "machine." However, the legislative intent derived from the Tariff Classification Study (1960) and the First Supplemental Report thereto (January, 1962) clearly was otherwise. The Study (Subpart D, Part 5 of Schedule 7) proposed the following provision for item 734.20 (p. 264):

> Game machines, including coin or disc operated game machines . . . and parts thereof

The First Supplemental Report recommended the following insertion before ", and parts thereof" (p. 80):

> and including games having mechanical controls for manipulating the action

The following comments accompanied this recommendation:

> The proposed change in the definition of "toy" might cause a significant change in the existing treatment of certain hockey games imported in substantial volume from Canada. These games have simple, mechanical controls for manipulating the hockey players, but might not be regarded as a game "machine". The foregoing change in item 734.20, together with the change in headnote 1 of part 5E [to except games and other articles in items 734.15 and 734.20] . . . will insure that the existing treatment of these games will be substantially continued.

From all the foregoing, it is concluded that the imported merchandise comes within the scope of item 734.20 on two aspects—(1) as a game machine, and (2) as a game having mechanical controls for manipulating the action.

■ Lastly, since the merchandise in issue is described by both item 734.20 and item 734.15, it is incumbent upon plaintiff to establish which provision most specifically describes the merchandise. *Broderick & Bascom Rope Co. v. United States,* 460 F.2d 1070, 59 CCPA 130, C.A.D. 1053 (1972); Tariff Schedules of the United States, *General Interpretative Rule* 10(c).

In this regard, the provision for game machines and games having mechanical controls for manipulating the action (item 734.20) is more specific than the catch-all provision for *"other* games played on boards of special design" [emphasis added] inasmuch as item 734.20 embraces requirements of classification more difficult to satisfy than item 734.-15. See e. g., *Wilfred Schade & Co. v. United States,* 62 Cust.Ct. 138, 140, C.D. 3701, 295 F.Supp. 1117, 1119–20 (1969).

■ In conclusion, the court holds that the imported merchandise is properly classifiable under item 734.20. Therefore, plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied. The district director at the port of Ogdensburg, N.Y. is directed to reliquidate the entries accordingly.